## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

RACHEL HELLER,                          :
                                        :
    Plaintiff,                      :
                                        :
v.                                      :    CIVIL ACTION NO.:
                                        :
ABC NEWS, INC.; GLASS                   :
ENTERTAINMENT GROUP                     :    **JURY TRIAL DEMANDED**
LLC; and HULU, LLC,                     :
                                        :
    Defendants.                     :
                                        :

## <u>VERIFIED COMPLAINT</u>

Plaintiff Rachel Heller, by and through her undersigned counsel, hereby files her Verified Complaint against ABC News, Inc., Glass Entertainment Group LLC, and Hulu, LLC, showing the Court as follows:

## <u>Nature of the Action</u>

Plaintiff was a student at Kell High School in Cobb County, Georgia who graduated in 2018. Plaintiff was the innocent victim of repeated sexual abuse by Spencer Herron, one of her teachers, while she attended Kell.  Plaintiff reported Herron's sexual abuse to authorities in Cobb

County which led to Herron's arrest, conviction, and time served in prison.

After Herron's arrest, Herron's then-wife, Jenifer, discovered that Herron had had sexual relations with approximately sixty (60) women during their seven (7) years of marriage. These and other facts regarding Plaintiff and Jenifer's ordeals led to a podcast series produced by Defendant Glass Entertainment Group, LLC ("Glass") titled "Betrayal." Rachel was interviewed for the podcast but only after Glass expressly agreed that her interview would only be used for the podcast series.

The Betrayal podcast was so immensely popular that Glass and Defendant ABC News, Inc. produced a three-part docuseries, also titled "Betrayal," that began streaming on Hulu on July 11, 2023. Plaintiff and Herron's ex-wife were prominently featured in the series with an especial focus in the third episode on a presentation Plaintiff gave to students at the University of North Georgia about her ordeal. Plaintiff was surprised to learn that Glass was intending to film the presentation and was not willing to go forth with the filming until Glass expressly agreed that it would only film the presentation on the condition that Plaintiff would

have the ultimate say as to whether her presentation would be used in the docuseries. Relying upon that agreement, Plaintiff allowed Glass to film her presentation.

Plaintiff later told Glass Executive Producer Jon Hirsch that she would not consent to Glass's use of her voice, image, likeness or intellectual property in the docuseries. But Hirsch would not have it. Despite Glass having twice agreed with Plaintiff that it would not use her voice, image or likeness without her consent, and despite the fact it would be an invasion of Plaintiff's privacy, Glass nevertheless used a substantial portion of Plaintiff's presentation at the University of North Georgia and significant portions of Plaintiff's podcast interview in the Betrayal docuseries that is now streaming on Hulu.

The irony of "no means no" could not be more apparent. Plaintiff has suffered harm from this unwanted intrusion and misappropriation of her image and likeness in amounts that will be proven at trial, and Plaintiff hereby insists that Hulu immediately halt streaming those portions of the Betrayal docuseries where Plaintiff's voice, image or likeness are used.

## The Parties

1.      Plaintiff Rachel Heller ("Rachel") is an individual residing in Cobb County, Georgia, who is over 18 years of age.

2.      Defendant ABC News, Inc. ("ABC") is a corporation organized and existing under Delaware law.  ABC may be served with process through its registered agent CSC of Stephens County, Inc., 597 Big A Road, Toccoa, GA 30577.

3.      Defendant Glass Entertainment Group LLC ("Glass") is a domestic limited liability company formed and existing under the laws of Pennsylvania.  Glass Entertainment may be served with process through the Pennsylvania Department of State or its chief executive officer, Nancy Glass, at 211 Rock Hill Road, Bala Cynwyd, Pennsylvania 19004.

4.      Defendant Hulu, LLC ("Hulu") is a domestic limited liability company formed and existing under the laws of Delaware.  Hulu may be served with process through its registered agent CSC of Stephens County, Inc., 597 Big A Road, Toccoa, GA 30577.

## Jurisdiction and Venue

5.    This Court has diversity jurisdiction pursuant to 28 U.S.C. §

1332 because (a) this action is between citizens of different states and (b)

the matter in controversy exceeds $75,000, exclusive of interest and costs.

This Court has supplemental jurisdiction of the state law claims

pursuant to 28 U.S.C. § 1367(a).

6.    This Court has personal jurisdiction over all Defendants.

7.    Venue for this action lies in this judicial district and division

pursuant to 28 U.S.C. § 1391(b).

## Background Facts

8.    Glass is the producer of a podcast series known as "Betrayal"

(hereinafter the "Betrayal Podcast"), which, according to an April 28,

2022 press release, is a story about Jenifer Faison (hereinafter "Faison")

whose former husband, Spencer Herron, pled guilty to charges that he

had sexually assaulted Plaintiff Rachel Heller while Rachel was a

student at Kell High School in Cobb County, Georgia.

9.    During the production of the Betrayal Podcast, Glass wanted

to interview Rachel and to use some or all of a recording of her voice from

that interview in the Betrayal Podcast.

10.    Glass knew that without Rachel's permission, it would violate Rachel's right to privacy if Glass were to use Rachel's interview in the Betrayal Podcast.

11.    Rachel expressed an interest in being interviewed and allowing Glass to use the recording of her interview in the Betrayal Podcast.

12.    On or about December 17, 2021, Glass presented Rachel with an Appearance Release (the "Podcast Appearance Release") which, if signed by Rachel, would have given Glass considerable and extensive rights to the use of Rachel's name, voice, image, likeness, and biographical information, as shown in the following provisions:

> I agree that Producer may tape and record my voice, conversation and sounds, during and in connection with my appearance, and that Producer shall be the exclusive owner of the results and proceeds of such taping, and recording (the "Materials") with the right, throughout the world, an unlimited number of times in perpetuity, to copyright, to use and to license others to use, in any manner, and in all media (now known or hereafter invented), all or any portion thereof or a reproduction thereof in connection with the Program or otherwise.
>
> I further agree that Producer may use and license others to

use my voice, likeness and any biographical material concerning me which I may provide in any and all media, and in the promotion, advertising, sale, publicizing and distribution of the Program and/or otherwise, in connection with the Program and in connection with Producer and/or affiliated services, throughout the world in any manner, an unlimited number of times in perpetuity. Producer shall not have any obligation to actually produce the Program, or to utilize my name, voice, likeness, biographical information or the Materials to exercise the rights and permissions granted herein for purposes of the Program or otherwise.

I agree that my sole remedy in the event of any claim against Producer shall be the recovery of damages and in no event shall I seek or be entitled to rescission, injunctive or other equitable relief.

13.    Rachel refused to agree to the Podcast Appearance Release because it was too broad.  Rachel did agree, however, to be interviewed and to allow an audio recording of the interview to be used in the Betrayal Podcast **but only upon Glass's express agreement that the audio recording of the interview would be used *solely* for the podcast.** Glass agreed to Rachel's condition.  The agreement is memorialized at the beginning of the recording of the interview, which is presumably in Glass's possession.

14.    Rachel would not have given the interview if Glass had not agreed that the interview would be used *solely* for the Betrayal Podcast.

15.    The Betrayal Podcast was released in April 2022.  Several audio portions of Rachel's interview are featured in the series.

16.    According to a press release issued by Glass after the Betrayal Podcast series launched, the Betrayal Podcast "quickly skyrocketed to the No. 1 podcast in America across all major platforms and amassed more than eight million downloads to date since its release this past April."  Glass added that "[f]ollowing its enormous success, "Betrayal" is being adapted into a TV docuseries for a premium streamer."

17.    Indeed, "Betrayal" was adapted into a TV docuseries and the "premium streamer" is Defendant Hulu.

18.    Glass and ABC are the producers of the Betrayal docuseries (hereinafter the "Betrayal Docuseries") referenced in Glass's press release.

19.    Jenifer Faison, the ex-wife of the individual who sexually abused Rachel at Kell High School in Cobb County, was heavily involved in the production of the Betrayal Docuseries.

20.    During the production of the Betrayal Docuseries, Faison often acted as Glass's agent.

21.    Unrelated to the production of the Betrayal Podcast or the Betrayal Docuseries, Rachel and Faison were invited to give presentations on their respective ordeals involving Spencer Herron to a criminal justice class at The University of North Georgia ("UNG") in Dahlonega, Georgia, on November 17, 2022.

22.    On November 5, 2022, in a meeting between Faison and Rachel at Faison's house to prepare for their presentations at UNG, Rachel was shocked to learn from Faison that Glass was going to film the presentations for the Betrayal Docuseries.   When Rachel expressed reluctance to being filmed for any purpose, **Faison told Rachel that she should not be concerned because Rachel would have the ultimate say as to whether the recording of her would be used in the Betrayal Docuseries.**  Faison explained that Glass would film more angles of Faison and Faison's speech just in case Rachel decided to back out.   Acting as an agent of Glass, Faison specifically told Rachel the following:

> [W]e would never be able to use footage of you if you didn't sign a release.  So, if we are at that event and the camera like is getting a wide shot and you're in it or filming it, we should either, if you're not okay with them filming it knowing that

you hadn't made a decision, then we should split our speeches
so maybe I'll come do mine and then you do yours just so we
are not standing next to each other the whole time.

23.    Faison's representation that Rachel had the ultimate say as
to whether she would appear in the Betrayal Docuseries led Rachel to go
forward with the filming of the presentation at UNG on November 17,
2022.

24.    Rachel would not have participated in the filming at UNG if
she had not been assured by Faison, acting as agent for Glass, that she
was in full control of whether any of her presentation would appear in
the Betrayal Docuseries.

25.    Glass was well aware *before* the filming of the presentations
at UNG that Rachel had not given her consent to Glass's use of her name,
voice, image, or likeness for the Betrayal Docuseries (in writing or
otherwise) and was further aware of Faison's representation to Rachel
that it was safe for Rachel to go forth with the filming because Rachel
would have the ultimate say regarding Glass's use of her name, voice,
image, and likeness (the "Docuseries Agreement").  Glass's awareness of
these facts is underscored by the fact that Glass filmed Faison and

Rachel's presentations in a manner that if Rachel were to ultimately withhold her consent, Glass could still use the filming of Faison's presentation. In other words, Glass made sure that Rachel was not in the background or beside Faison during the filming of Faison's presentation.

26. The manner in which Glass filmed the presentations at UNG gave Rachel additional assurances that she would have the ultimate say as to whether Glass would use her name, voice, image, and likeness in the Betrayal Docuseries.

27. As of November 17, 2022, Glass knew that if it were to use the filming of Rachel's presentation at UNG without Rachel's permission, it would be intentionally violating Rachel's right to privacy by misappropriating her voice, image, and likeness.

28. As of November 17, 2022, Glass knew that if it were to use the filming of Rachel's presentation at UNG without Rachel's permission, it would be intentionally breaching Glass's agreement with Rachel that it would not use her voice, image, or likeness in the Betrayal Docuseries without Rachel's permission.

29.    As of November 17, 2022, Glass further knew that if it were to use any of the interview of Rachel from the Betrayal Podcast in the Betrayal Docuseries without Rachel's permission, it would be intentionally violating Rachel's right to privacy through misappropriation of her voice and likeness.

30.    As of November 17, 2022, Glass further knew that if it were to use any of the interview of Rachel from the Betrayal Podcast in the Betrayal Docuseries without Rachel's permission, it would be intentionally breaching its express agreement with Rachel that her interview was to be used solely in the Betrayal Podcast.

31.    Glass acknowledged to Rachel in a February 13, 2023 telephone conversation between Rachel and Glass employee Kayce McCue (one of the producers of the Betrayal Docuseries) that Glass had allowed Faison to act as its agent in negotiating an agreement with Rachel whereby Rachel would allow her presentation to be filmed on the express condition that Rachel would have the ultimate say as to whether Glass could use her name, voice, image, and likeness in the Betrayal Docuseries.

32.    On November 17, 2022, immediately after the filming of Faison and Rachel's presentations at UNG, McCue, who attended the presentations, handed Rachel an On-Camera Release and a Non-Exclusive License Agreement for Rachel to sign in the event she decided to permit Glass to use the filming of her presentation at UNG in the Betrayal Docuseries.

33.    Rachel later told McCue that she had objections to several portions of the On-Camera Release and the Non-Exclusive License Agreement.  This led McCue to send Rachel an amended On-Camera Release and an amended Non-Exclusive License Agreement on December 6, 2022.

34.    Throughout December 2022 and even into February 2023, McCue repeatedly encouraged Rachel to sign the amended On-Camera Release and the amended Non-Exclusive License Agreement so that Glass could legally use the filming of Rachel at her UNG presentation in the Betrayal Docuseries.

35.    In telephone calls on December 21, 2022, and February 13, 2023, McCue confirmed to Rachel that Glass would not use her voice,

image, or likeness in the Betrayal Docuseries unless Rachel agreed to such use in writing.

36.    Rachel never agreed to the amended On-Camera Release or the amended Non-Exclusive License Agreement.

37.    Rachel never agreed to let Glass use her name, image, voice, or likeness in the Betrayal Docuseries.

38.    In a telephone call between Rachel and McCue on December 21, 2022, Rachel told McCue that she did not want to participate in the Betrayal Docuseries.

39.    In a text message from McCue to Rachel on December 22, 2022, McCue confirmed Glass's knowledge that Rachel had declined to participate in the production. McCue wrote, "Hey Rachel, I just wanted to say thank you for taking the time to speak with me the past few weeks, and to reiterate that I understand *and respect your decision*." (Emphasis added).

40.    In a telephone conversation between McCue and Rachel on February 13, 2023, Rachel asked if her interview from the Betrayal Podcast would be used in the Betrayal Docuseries.  McCue said the

interview would only be used "if you are comfortable with that." Rachel was not "comfortable with that" and never gave permission to Glass to use any of her interview from the Betrayal Podcast in the Betrayal Docuseries.

41. After Rachel told McCue that she would not give her permission for Glass to use any of her presentation at UNG in the Betrayal Docuseries, Jon Hirsch, Senior Vice President & Executive Producer at Glass and Executive Producer and the Director of the Betrayal Docuseries, sent numerous text messages to Rachel trying to engage her in a conversation regarding the use of her voice, image, and likeness in the Betrayal Docuseries, including the possibility of an interview.

42. Rachel responded to Hirsch's text on March 14, 2023, in a text where she communicated with certainty that she would *not* consent to Defendants' use of her voice, image, or likeness in the Betrayal Docuseries or anywhere else:

> I have been aware of your attempts to communicate with me and decided to take my time to respond.
>
> To put it simply, **my decision to not participate in this**

**production still stands.**

* * *

As a rape and sexual abuse victim, I hope that no one in my position would ever have to go through what you people put me through.  I am on no one else's timeline but my own.  I will not hop, skip, or jump for money, an interview, or some credit.

* * *

Actions speak louder than words and the fact that I was notified last of any needed involvement in this production and on top of that giving me a deadline to speak about the rape and abuse I endured says all I need to know about this production.  I also refuse to work with Jenifer Faison or any person who can look me in the eye and question if they were also groomed as an adult who went through a completely different set of circumstances than what my 15 year old self had to go through and then tell me in my face that I was just "another woman" while pretending to care in front of the cameras.

* * *

**I do not consent to the following** but also not limited to being broadcasted or used in any manner whatsoever:

- Any correspondence I have had with Jenifer Faison (recorded calls, texts, emails, etc.);
- Any correspondence between me and anyone else from this production including you and Kayce (recorded calls, texts, emails, etc.);
- **Any footage/images taken of me from this production** or from Jenifer Faison;
- Any intellectual property I had created including

> my powerpoint on Educator Sexual Misconduct;
> - Any information I have shared with Jenifer Faison in particular regarding my case;
> - I was groomed by Spencer Herron but I will not be manipulated by Jenifer Faison or anyone for that matter anymore.

(Emphasis and bullet points added).

43.     Glass refused to accept Rachel's decision and defiantly chose to use her name, voice, image, and likeness even though by doing so Glass intentionally invaded Rachel's right to privacy and intentionally breached both of its express agreements with Rachel.

44.     In a voicemail left with Rachel on July 7, 2023, Hirsch responded to Rachel's March 14, 2023 text with the following message:

> I also wanted to give you a heads up that a decision was made to include some of the publicly available materials regarding your story.  This includes some of the podcast audio and a bit of the presentation.

45.     On July 7, 2023, Glass knew that it would be an intentional invasion of Rachel's privacy for Glass, ABC, and Hulu to broadcast in the Betrayal Docuseries (1) any of Rachel's interview from the Betrayal Podcast; and (2) any of Rachel's presentation at UNG.

46.     On July 7, 2023, Glass knew that it would be an intentional

breach of Glass's express agreements with Rachel for Glass, ABC, and Hulu to broadcast in the Betrayal Docuseries (1) any of Rachel's interview from the Betrayal Podcast; and (2) any of Rachel's presentation at UNG.

47.    On or about July 11, 2023, Hulu began streaming the Betrayal Docuseries through its subscription streaming service, including the voice, image and likeness of Rachel without her consent or permission.

48.    Rachel was prominently featured in the Betrayal Docuseries as well as in Hulu's marketing of the production.

49.    If Defendants ABC and Hulu were not aware before receipt of this Verified Complaint of the fact that Rachel never consented to the use of her voice, image, and likeness in the Betrayal Docuseries, they are now.  Any continued use of Rachel's voice, image, and likeness represents an intentional invasion of Rachel's privacy.

### COUNT I – Misappropriation of Plaintiff's Likeness
### (Against Glass, ABC, and Hulu)

50.    Plaintiff incorporates by reference as if fully stated herein each and every allegation set forth in Paragraph Nos. 1 through 49,

above.

51.    By utilizing Rachel's voice from the Betrayal Podcast interview in the Betrayal Docuseries, Glass, ABC, and Hulu have appropriated and continue to appropriate Rachel's voice without her consent or permission.

52.    Glass, ABC, and Hulu used and are continuing to use Rachel's voice from the Betrayal Podcast interview in the Betrayal Docuseries for their own commercial gain.

53.    By utilizing Rachel's voice, image, and likeness from Rachel's presentation at UNG, Glass, ABC, and Hulu have appropriated and continue to appropriate Rachel's voice, image, and likeness in the Betrayal Docuseries.

54.    Glass, ABC, and Hulu's use of Rachel's voice, image, and likeness from Rachel's presentation at UNG in the Betrayal Docuseries was and remains without Rachel's consent or permission.

55.    Glass, ABC, and Hulu used and are continuing to use Rachel's voice, image, and likeness from Rachel's presentation at UNG in the Betrayal Docuseries for their own commercial gain.

56.    Glass's use of Rachel's voice, image, and likeness without her consent has at all times been an intentional invasion of her privacy.

57.    Plaintiff alleges on information and  belief that ABC and Hulu's use of Rachel's voice, image, and likeness without her consent has at all times been an intentional invasion of her privacy.

58.    ABC and Hulu's continued use of Rachel's voice, image, and likeness from this point forward will be an intentional invasion of her privacy.

59.    Rachel's voice, image, and likeness utilized by Glass in the Betrayal Podcast and Betrayal Docuseries are inherent aspects of her identity.

60.    Rachel has suffered irreparable harm from Glass, ABC, and Hulu's unauthorized use of her voice, image and likeness in the Betrayal Docuseries.

61.    To the extent that Rachel's harm from Glass, ABC, and Hulu's unauthorized use of her voice, image, and likeness in the Betrayal Docuseries may be calculated, the monetary amount of Rachel's harm will be proven at trial.

62.    Because Glass, ABC, and Hulu have acted in bad faith and have caused Rachel unnecessary trouble and expense, Rachel is further entitled to recover her attorneys' fees and costs of this action pursuant to O.C.G.A. §13-6-11.

## COUNT II – Breach of Contract
### (Against Glass)

63.    Plaintiff incorporates by reference as if fully stated herein each and every allegation set forth in Paragraph Nos. 1 through 62, above.

64.    In consideration for Rachel giving Glass an interview for the Betrayal Podcast, Glass expressly agreed with Rachel that the interview would be used solely for the podcast (hereinafter the "Podcast Agreement").

65.    The Podcast Agreement is a valid, binding agreement supported by proper consideration.

66.    Rachel performed and complied with all of her obligations under the Podcast Agreement.

67.    Glass breached the Podcast Agreement with Rachel by using portions of her interview from the Betrayal Podcast in the Betrayal

Docuseries.

68.    In consideration for Rachel allowing Glass to film her presentation at UNG, Glass expressly agreed that it would not use any portion of that recording unless Rachel consented (hereinafter the "Docuseries Agreement").

69.    The Docuseries Agreement is a valid, binding agreement supported by proper consideration.

70.    Rachel performed and complied with all of her obligations under the Docuseries Agreement.

71.    Glass breached the Docuseries Agreement with Rachel by using portions of her presentation at UNG in the Betrayal Docuseries.

72.    Rachel has been harmed by Glass for Glass's breaches of the Podcast Agreement and the Docuseries Agreement.

73.    As a result of Glass's material breaches of the Podcast Agreement and the Docuseries Agreement, Rachel has suffered irreparable harm from Glass's breaches of the Podcast Agreement and the Docuseries Agreement.

74.    To the extent that Rachel's harm from Glass's breaches of the

Podcast Agreement and the Docuseries Agreement may be calculated, the monetary amount of Rachel's harm will be proven at trial.

75.    Because Glass has acted in bad faith and has caused Rachel unnecessary trouble and expense, Rachel is further entitled to recover her attorneys' fees and costs of this action pursuant to O.C.G.A. §13-6-11.

<u>**COUNT III – Specific Performance**</u>
**(Against Glass)**

76.    Plaintiff incorporates by reference as if fully stated herein each and every allegation set forth in Paragraph Nos. 1 through 75, above.

77.    Rachel fully performed her obligations under the Podcast Agreement and the Docuseries Agreement.

78.    Glass failed and refused to perform its obligations under the Podcast Agreement and the Docuseries Agreement.

79.    Rachel, therefore, seeks specific performance of the Podcast Agreement and the Docuseries Agreement.

80.    Because Glass has acted in bad faith and has caused Rachel unnecessary trouble and expense, Rachel is further entitled to recover

her attorneys' fees and costs of this action pursuant to O.C.G.A. §13-6-11.

## COUNT IV – Unjust Enrichment
### (Against ABC and Hulu)

81.    Plaintiff incorporates by reference as if fully stated herein each and every allegation set forth in Paragraph Nos. 1 through 80, above.

82.    Although there is no legal contract between Rachel and either ABC or Hulu, by using Rachel's voice, image, and likeness without her consent, ABC and Hulu have been conferred an unjust benefit for which ABC and Hulu ought to compensate her.

83.    ABC and Hulu's unjust enrichment will be proven at trial.

## COUNT V – Punitive Damages
### (Against Glass, ABC, and Hulu)

84.    Plaintiff incorporates by reference as if fully stated herein each and every allegation set forth in Paragraph Nos. 1 through 83, above.

85.     Rachel is entitled to punitive damages from Glass, ABC, and Hulu because Glass, ABC, and Hulu's actions show willful misconduct,

malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences.

**WHEREFORE**, Plaintiff Rachel Heller respectfully prays for the following relief:

(1) That this Court render judgment in favor of Plaintiff Rachel Heller and against all Defendants for specific performance against Glass and an injunction against all Defendants to prevent them from further invasions of Rachel's privacy;

(2) That this Court render judgment in favor of Plaintiff Rachel Heller and against all Defendants for damages in amounts to be proven at trial;

(3) That this Court render judgment in favor of Plaintiff Rachel Heller and against Defendants for punitive damages;

(4) That this Court render judgment in favor of Plaintiff Rachel Heller and against Defendants for attorneys' fees and other expenses of litigation pursuant to O.C.G.A. § 13-6-11;

(5) That this Court tax all costs against Defendants;

(6) That Plaintiff Rachel Heller have a trial by jury on all issue so triable; and

(7) That this Court enter such other and further relief as it deems just and proper under the circumstances.

Dated: October 9, 2023

/s/ James W. Hawkins
Cary Ichter
Georgia Bar No. 382515
James W. Hawkins
Georgia Bar No. 338767
**ICHTER DAVIS LLC**
400 Interstate North Pkwy SE
Suite 860
Atlanta, Georgia 30339
Phone: 404.869.7600
Fax: 404.602.0037
jhawkins@ichterdavis.com
cichter@ichterdavis.com

*Counsel for Plaintiff*

## **CERTIFICATION**

In accordance with LR 5.1C, ND GA, I hereby certify that this document has been prepared in 14 point, Century Schoolbook font.

_/s/ James W. Hawkins_
**JAMES W. HAWKINS**

27

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| Rachel Heller, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : CIVIL ACTION NO.: |
| | : |
| ABC NEWS, INC.; GLASS | : |
| ENTERTAINMENT GROUP | : **JURY TRIAL DEMANDED** |
| LLC; and HULU, LLC, | : |
| | : |
| Defendants. | : |
| | : |

## **VERIFICATION**

COMES NOW Rachel Heller, Plaintiff in the above-referenced

action, and swears or affirms that the facts contained in the foregoing

Verified Complaint are true and correct.

_____
Rachel Heller

Sworn to and subscribed before me this

9th day of October , 2023.

_____
Notary Public