# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| RACHEL HELLER,<br><br>      Plaintiff,<br><br>v.<br><br>ABC NEWS, INC.; GLASS ENTERTAINMENT GROUP LLC; and HULU, LLC,<br><br>      Defendants. | Case No. 1:23-CV-04595-ELR |

## REPLY IN SUPPORT OF DEFENDANTS ABC NEWS, INC. AND HULU, LLC'S MOTION TO DISMISS

Amanda G. Hyland
GA Bar No. 325115
**TAYLOR ENGLISH DUMA LLP**
Georgia Bar No. 325115
1600 Parkwood Circle, Suite 200
Atlanta, Georgia 30339
(770) 434-6868
ahyland@taylorenglish.com

Nathan Siegel (admitted *pro hac vice*)
Marietta Catsambas (admitted *pro hac vice*)
**DAVIS WRIGHT TREMAINE LLP**
1301 K Street NW, Suite 500 East
Washington, D.C. 20005
(202) 973-4200
nathansiegel@dwt.com
mariettacatsambas@dwt.com

*Attorneys for Defendants ABC News, Inc. and Hulu, LLC*

## PRELIMINARY STATEMENT

Plaintiff's oppositions barely engage with Defendants ABC News and Hulu's arguments about the single misappropriation claim pled against them. Where they do, Plaintiff's arguments and the cases she cites merely reinforce why the claims against ABC News and Hulu—Counts I, V, and VI—must be dismissed.

## ARGUMENT

### I. ABC NEWS AND HULU DID NOT WAIVE THEIR FIRST AMENDMENT RIGHTS

Plaintiff claims that Glass waived its First Amendment rights, and then baldly asserts that ABC News and Hulu are somehow "bound" by Glass's purported waiver. Dkt. 34 at 1-2. ABC News and Hulu refers the Court to Glass's reply regarding Plaintiff's arguments about Glass, but Plaintiff provides no support at all for her assertion about these Defendants. Nor is any such support plausibly pled.

Waivers of First Amendment rights must be narrowly construed: "[t]he Supreme Court has long recognized that a party may waive constitutional rights if there is 'clear' and 'compelling' evidence of waiver and that waiver is voluntary, knowing, and intelligent." *Democratic Nat'l Comm. v. Republican Nat'l Comm.*, 673 F.3d 192, 205 (3d Cir. 2012). Here, Plaintiff not only admits that she had no contract with ABC News or Hulu, *see* FAC ¶ 94, she never alleges that she communicated with them at all. There is therefore no allegation of waiver that is even pled in the Complaint, let alone any pleading of "clear" and "compelling" facts

1

that could plausibly establish any waiver of constitutional rights.

Importantly, Plaintiff does not meaningfully contest that if there was no waiver, the Docuseries would be an expressive work broadly protected by the First Amendment from misappropriation claims. *See Thoroughbred Legends LLC v. Walt Disney Co.*, No. 1:07-CV-1275-BBM, 2008 WL 616253, at *11 (N.D. Ga. 2008) (quoting *Daly v. Viacom, Inc.*, 238 F. Supp. 2d 1118, 1123 (N.D. Cal. 2002)). For this reason alone, ABC News and Hulu's motion to dismiss should be granted.

## II.  GEORGIA LAW INDEPENDENTLY PROTECTS THE DOCUSERIES BECAUSE IT IS ABOUT A MATTER OF PUBLIC INTEREST

Even if there was evidence of such a waiver, which there is not, it would make no difference. ABC and Hulu's principal ground for dismissal is independently grounded in Georgia law, not just the First Amendment. The principle that "where an incident is a matter of public interest, or the subject matter of a public investigation, a publication in connection therewith can be a violation of no one's legal right of privacy" was established as a matter of state law in the 1950s. *Waters v. Fleetwood*, 212 Ga. 161, 167, 91 S.E.2d 344, 348 (1956); *see also Ramsey v. Georgia Gazette Publ'g Co.*, 164 Ga. App. 693, 695, 297 S.E.2d 94, 96 (1982). Plaintiff certainly offers no basis to contend that ABC News and Hulu generally "waived" the requirements of Georgia common law, if such a waiver were even theoretically possible.

Plaintiff argues that the Docuseries is not about a matter of public interest for either of two reasons: (1) the criminal cases arising from Herron's actions were over by the time Plaintiff shared her story, and (2) the use of Plaintiff's voice, image, and likeness was not related to the newsworthiness of the Docuseries. Both of these arguments fail.

*First*, newsworthiness does not expire, nor does the public lack any interest in recent history—let alone history more broadly. "Georgia courts have repeatedly reaffirmed that reporting about those touched by crime and criminal investigations is a matter of public interest which cannot support a claim for . . . invasion of privacy." *Crawl v. Cox Enters.*, No. CIV.A. 00VS002088F, 2001 WL 849222, at *6 (Ga. State Ct. Mar. 13, 2001). As other state courts have expressed, there is

> no doubt that reports of the facts of past crimes are newsworthy. Media publication of the circumstances under which crimes were committed in the past may prove educational in the same way that reports of current crimes do. The public has a strong interest in enforcing the law, and this interest is served by accumulating and disseminating data cataloguing the reasons men commit crimes, the methods they use, and the ways in which they are apprehended.

*O'Hilderbrandt v. Columbia Broad. Sys., Inc.*, 40 Cal. App. 3d 323, 334, 114 Cal. Rptr. 826, 833 (1974). As a result, there are numerous cases rejecting misappropriation and right of publicity claims arising out of documentaries or other programs that relate to past crimes.

For example, in *Alexander v. News Corp.*, No. CIV.A. CV203-158, 2004 WL

3

3591340 (S.D. Ga. Mar. 19, 2004), the court found that defendant's book, which discussed the defendant's experience as an investigator in the War on Drugs and disclosed that plaintiff was a confidential informant for the DEA circa 1993, was newsworthy. *Id.* at *1-3. *See also Matthews v. Wozencraft*, 15 F.3d 432 (5th Cir. 1994) (affirming dismissal of misappropriation claim arising out of a book about the past crimes of a corrupt police officer); *Nichols v. Moore*, 334 F. Supp. 2d 944 (E.D. Mich. 2004) (dismissing misappropriation claim arising out of documentary about the Oklahoma City bombing released seven years later), *aff'd*, 477 F.3d 396 (6th Cir. 2006); *Porco v. Lifetime Ent. Servs., Inc.*, 150 N.Y.S.3d 397 (N.Y. App. Div. 2021) (docudrama about past murder could not support misappropriation claim).

Moreover, in this case, the Docuseries covered Herron's case not just for its own sake, but because it exemplified more broadly the problem of sexual abuse of minors by persons entrusted with their care—an issue that remains of significant interest to the public. *See, e.g.*, *Matthews*, 15 F.3d at 436 (past criminal case related to topic of police corruption, which "is a matter of public concern"). Indeed, in her Podcast interview Plaintiff explained that she decided to speak publicly in part because she recognized that her personal experience has larger social significance: "This isn't about me anymore. This is bigger than me now." Ex. B (Ep. 3 at 30:11-30:33). She said that to this day there are many other young victims going through the same experience due to the "negligence of the system," and so "this is a fight for

4

all the kids who feel like they can't speak up." Ex. B (Ep. 3 at 30:30-30:55, 31:15-31:40).[1] And the fact that her story was worthy of studying in college classes further reinforces its broader significance.

*Second*, Plaintiff's voice, image, and likeness were related, and indeed integral, to the Docuseries' discussion of both her ordeal and the phenomena of sexual abuse more broadly, such as the nature of grooming. Here too, Plaintiff herself articulated why it was important for her story to be told in her own voice: "It's one thing to go through the courts and have an attorney talk for you, but it's also another to step out and speak for yourself." Ex. B (Ep. 3 at 4:50-5:35).

Plaintiff's cited cases do not support her contention that her likeness had no relevance to the subject of the Docuseries. To the contrary, they illustrate why it was an integral part of the program. Both cases involved situations where the defendant was publishing what was essentially a commercial product in which any newsworthy content was essentially an excuse for selling pictures of the plaintiff. In *Downing v. Abercrombie & Fitch*, pictures of several surfers were included in a surf-themed clothing catalogue. The court found there was "a tenuous relationship

---

[1] Plaintiff's cited cases do not stand for the proposition that nothing related to a crime can ever be newsworthy once actual legal proceedings are over. The facts of both cases simply involved ongoing investigations, but neither suggested that the law would bar documentarians or historians from ever re-visiting criminal cases. *See Waters*, 212 Ga. at 167, 91 S.E.2d at 348; *Ramsey v. Ga. Gazette Publ'g Co.*, 164 Ga. App. 693, 693-95, 297 S.E.2d 94, 95-96 (1982).

between [their] photograph and the theme presented" in a catalogue whose purpose was to sell clothes. 265 F.3d 994, 1002 (9th Cir. 2001). While the clothing catalogue included some content about surfing and surf culture, the use of the plaintiffs' names and pictures were "window-dressing to advance the catalog's surf-theme." *Id.* The Ninth Circuit distinguished the case from another decision in which a court held that depictions of a surfing legend in a documentary about surfing were protected by both state law the First Amendment because "his identity directly contributed to the story about surfing which came within the protected public interest." *Id.* (citing *Dora v. Frontline Video Inc.,* 15 Cal. App. 4th 536, 543, 18 Cal. Rptr. 2d 790, 792-93 (1993)). This case is likewise about a documentary, not a sales catalogue.

In *Toffoloni v. LFP Publishing Group, LLC*, the Eleventh Circuit similarly held that the short biography of a deceased female wrestler was essentially an excuse for *Hustler* magazine to publish old nude photographs of her that had been taken twenty years before her death: "LFP's brief biography of Benoit's life, even with its reference to her youthful pursuit of modeling, is merely incidental to its publication of her nude photographs." 572 F.3d 1201, 1210 (11th Cir. 2009). The facts of this case are quite the opposite. Plaintiff is, in large part, the point of the story, and by definition seeing and hearing her tell her story in her own voice and commenting on the broader issues it raises are not incidental. The misappropriation claim against ABC News and Hulu should be therefore be dismissed as a matter of both Georgia

6

and First Amendment law because the Docuseries concerns a matter of public interest.

### III. PLAINTIFF'S PRESENTATION WAS OPEN TO THE PUBLIC

Finally, most of Plaintiff's opposition to these Defendants' motion argues that her presentation at the University of North Georgia was not physically open to all members of the public. Dkt. 34 at 2-7. This Court need not even consider this issue to dismiss the misappropriation claim against ABC News and Hulu, because for the reasons stated above it is barred by both state law and the First Amendment regardless. But if this Court does address this point, Plaintiff's arguments lack merit, and indeed Plaintiff seems to misunderstand ABC News and Hulu's argument.

Importantly, even though Plaintiff's misappropriation claim also challenges the use of her name and voice in the Podcast excerpts that were included in the Docuseries, Plaintiff's opposition only addresses her class presentation. It thus implicitly concedes that her Podcast interview was (and still is) open to the public. But as these Defendants argued in their motion, that resolves the issue. The point of the "public observation" doctrine is that once a person elects to open their story to public observation, they may not selectively try to control subsequent iterations of the same subject merely because they also include some combination of their name, voice, and/or likeness. *See, e.g.*, *Somerson v. World Wrestling Ent., Inc.*, 956 F. Supp. 2d 1360, 1367 (N.D. Ga. 2013) ("There can be 'no liability when the defendant

7

merely gives further publicity to information about the plaintiff which is already public.'") (quoting *Cox Commc'ns, Inc. v. Lowe*, 173 Ga. App. 812, 814, 328 S.E.2d 384, 386 (1985)).

The case Plaintiff primarily relies on actually illustrates this point, because it presented essentially the opposite scenario of this case. In *Multimedia WMAZ, Inc. v. Kubach*, the court found that because the plaintiff had previously disclosed that he had AIDS anonymously, that fact was not known beyond a small circle of the plaintiff's friends and associates. 212 Ga. App. 707, 709, 443 S.E.2d 491, 494 (1994). As a result, the court held that the plaintiff had not waived his right to bring a claim for the publication of private facts based on the defendant's broadcast accidentally showing him as an AIDS patient to the public at large. By contrast, Plaintiff does not similarly allege that her identity was unknown following the release of the Podcast. Indeed, the fact that multiple other persons are interviewed on the Podcast praising Plaintiff's courage makes plain that is not the case.

Moreover, as noted above *Multimedia WMAZ* involved a claim for the publication of private facts, not misappropriation. The "embarrassing private fact[]" at issue was the fact that plaintiff had AIDS, which he did not want to reveal to the public at large. 212 Ga. App. at 708, 443 S.E.2d at 493. By contrast, Plaintiff is not arguing that her ordeal with Herron constitutes embarrassing private information or that people do not know she was the primary victim in the case. This case thus does

not support Plaintiff's argument.

In any event, even if this case was only about the class presentation, that was not a private setting. Plaintiff's citations to the visitor policies of Emory and other universities are irrelevant, but in any event whether visitors are or are not allowed does not define expectations of privacy in public school classrooms. Rather, courts have consistently held that "[o]pen communications to a classroom full of high school students cannot reasonably be described as private, as those students were free to repeat, record, and gossip about Plaintiff's comments." *Peters v. Mundelein Consol. High Sch. Dist. No. 120*, No. 21 C 0336, 2022 WL 393572, at *12 (N.D. Ill. Feb. 9, 2022). *See also Marriott v. USD 204, Bonner Springs-Edwardsville*, 289 F. Supp. 3d 1235, 1240 (D. Kan. 2017) (holding teacher did not have reasonable expectation of privacy in "a classroom in a public school, open to students, administrators, other staff, custodial staff, and sometimes other members of the public"); *Plock v. Bd. of Educ. of Freeport Sch. Dist. No. 145*, 545 F. Supp. 2d 755, 758 (N.D. Ill. 2007) ("A classroom is a public space in which government employees communicate with members of the public. There is nothing private about communications which take place in such a setting."); *Roberts v. Houston Indep. Sch. Dist.*, 788 S.W.2d 107, 111 (Tex. App.), *writ denied* (June 27, 1990) ("The activity of teaching in a public classroom does not fall within the expected zone of privacy."). Accordingly, even focusing on the specific setting of Plaintiff's

9

presentation to a public university class, which is not the relevant inquiry, Plaintiff's misappropriation claim would be barred for the additional reason that her image appeared in a public setting.

Finally, Plaintiff concedes that if her misappropriation claim is dismissed, her unjust enrichment claim must be dismissed as well. Dkt. 34 at 7.

## CONCLUSION

For the foregoing reasons and the reasons set forth in Defendants' opening brief, Defendants respectfully request that the Court grant their motion to dismiss Counts I, V, and VI with prejudice.

Dated: February 28, 2024

Respectfully submitted,

/s/ Amanda G. Hyland
Amanda G. Hyland
GA Bar No. 325115
**TAYLOR ENGLISH DUMA LLP**
1600 Parkwood Circle, Suite 200
Atlanta, Georgia 30339
(770) 434-6868
ahyland@taylorenglish.com

Nathan Siegel (admitted *pro hac vice*)
Marietta Catsambas (admitted *pro hac vice*)
**DAVIS WRIGHT TREMAINE LLP**
1301 K Street NW, Suite 500 East
Washington, D.C. 20005
(202) 973-4200
nathansiegel@dwt.com
mariettacatsambas@dwt.com

*Attorneys for Defendants ABC News, Inc. and Hulu, LLC*

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1D, counsel certifies that the foregoing was prepared in Times New Roman, 14-point font, in compliance with Local Rule 5.1C.

>                     */s/ Amanda G. Hyland*
>                     Amanda G. Hyland
>                     GA Bar No. 325115