# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| RACHEL HELLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | Case No. 1:23-cv-04595-ELR |
| ABC NEWS, INC.; GLASS | ) | |
| ENTERTAINMENT GROUP LLC; | ) | **ORAL ARGUMENT** |
| and HULU, LLC, | ) | **REQUESTED** |
| | ) | |
| Defendants. | ) | |

## REPLY MEMORANDUM OF DEFENDANT GLASS ENTERTAINMENT GROUP LLC IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT

David Aronoff (admitted *pro hac vice*)
California Bar No. 125694
Joshua Bornstein (admitted *pro hac vice*)
California Bar No. 311658
**FOX ROTHSCHILD LLP**
10250 Constellation Blvd, Suite 900
Los Angeles, CA 90067
Telephone: (310) 598-4150
Facsimile: (310) 556-9828
DAronoff@FoxRothschild.com
JBornstein@FoxRothschild.com

Elizabeth G. Brunette
Georgia Bar No. 560454
**FOX ROTHSCHILD LLP**
999 Peachtree Street NW, Suite 1500
Atlanta, Georgia 30309
Telephone: (404) 962-1000
Facsimile: (404) 962-1200
EBrunette@foxrothschild.com

*Attorneys for defendant Glass Entertainment Group LLC*

# INTRODUCTION

The Opposition Memorandum ("Opposition" or "Opp.") (Dkt. No. 33) of plaintiff Rachel Heller ("Heller") in response to the Motion to Dismiss First Amended Complaint ("FAC") of defendant Glass Entertainment Group LLC ("Glass") ("the Motion") (Dkt. No. 31-1) fails to establish that the FAC states plausible claims for relief.  Instead, the Opposition is based on unsupported and erroneous legal conclusions that, if true, would have an invidious chilling effect on free expression.  As the FAC fails to state viable claims for relief and Heller has already amended her claims, the FAC should be dismissed with prejudice.

# ARGUMENT

## I.    THE OPPOSITION FAILS TO ESTABLISH THAT COUNT ONE STATES A VIABLE MISAPPROPRIATION OF LIKENESS CLAIM.

### A.    The Opposition Fails to Establish that Heller's Misappropriation Claim is Not Based on Matters Open to Public Observation.

Under Georgia law, "[t]hat which is 'open to public observation,' … cannot be appropriated." *Pierce v. Warner Bros Ent., Inc*., 237 F. Supp. 3d 1375, 1381 (M.D. Ga. 2017) (quoting *Toffoloni v. LFP Pub. Group, LLC*, 572 F.3d 1201, 1207 (11th Cir. 2009)).  The Opposition concedes this point, but argues it only applies if the First Amendment is a shield too.  Opp. at 17.  This conclusion is wrong.  "[T]he right of publicity must attach to that which is ***not*** open to public observation…." *Toffoloni*, 572 F.3d at 1207 (emphasis added); *Pierce,* 237 F. Supp. 3d at 1381.

1

Here, the allegations of the FAC for Heller's misappropriation claim are based almost entirely on her consented-to interview for the podcast BETRAYAL ("the Podcast"), which Plaintiff alleges was used improperly in the documentary series BETRAYAL: THE PERFECT HUSBAND ("the Docuseries").  *See*, *e.g.*, FAC ¶¶ 51-52; *see also* Motion Exs. "A" and "B."  However, the Podcast interview was "open for public observation" after the Podcast was released to the public.  Indeed, the FAC expressly alleges that Heller agreed to the use of her interview in the Podcast (*id.*, ¶ 13), which was "immensely popular," and "skyrocketed to the No. 1 podcast in America across all major platforms" with "more than eight million downloads."  *Id.*, p. 2 and ¶ 16.  In the Podcast, Heller intentionally and publicly detailed her relationship with Spencer Herron ("Herron").  *See* Ex. "B" (Podcast Episodes 3 and 8).[1]  Because Heller's relationship with Herron was disclosed publicly by Heller in the Podcast before the Docuseries was produced, the later use of substantially the same "open to public observation" information in the Docuseries

---

[1] Among other things, in the Podcast, Heller publicly disclosed how she met Herron as a student at Kell High School, his grooming activities in luring her into a sexual relationship, what she thought of Herron during various stages of their relationship, her decision to tell her parents and report Herron to the authorities, and the victim impact statement she submitted to oppose Herron's early parole.  *See* Ex. "B" (Episodes 3 and 8). Heller even disclosed her first name "Rachel" and the year she graduated from Kell High School. *Id.* (Episode 8). Moreover, Heller's attorney, Michael Rafi, appeared on the Podcast too and described Heller's civil lawsuit against the high school administrators who allegedly failed to protect Heller from Herron. *Id.* (Episode 4); *see R.H. v. Wagner*, 879 S.E.2d 653 (Ga. Ct. App. 2022).

fails to allege a plausible misappropriation of likeness claim.  *Toffoloni*, 572 F.3d at 1207; *Pierce,* 237 F. Supp. 3d at 1381.

The FAC also avers that the Docuseries' use of Heller's classroom presentation at the University of North Georgia ("UNG") is actionable.  FAC ¶¶ 53-55.  But the UNG footage is almost entirely duplicative of Heller's Podcast interview (*compare* Ex. "A" (Docuseries Episode 3) *with* Ex. "B" (Podcast Episodes 3 and 8)), and thus its content was already "open to public observation" before the Docuseries was produced.  The only material "new" content in the Docuseries that was not disclosed in the Podcast is the likeness of Heller's face.[2] However, "[n]o one has the right to object merely because … his [or her] appearance is brought before the public, since neither is in any way a private matter, and both are open to public observation." *Toffoloni*, 572 F.3d at 1206-07 (quoting Restatement (Second) of Torts § 625C cmt. d (1977)); *Somerson v. World Wrestling Entm't, Inc*., 956 F. Supp. 2d 1360, 1366 (N.D. Ga. (2013) (same). As the rest of Heller's story had already been disclosed in the Podcast, the mere depiction of Heller's face in the Docuseries is not actionable.

Moreover, Heller's classroom presentation to students at UNG itself was an event that was "open to public observation" because the classrooms of public schools are public forums for purposes of privacy rights.  *Peters v. Mundelein Consol. High*

---

[2] Heller's last name was not disclosed in either the Podcast or the Docuseries.

*Sch. Dist. No. 120*, 2022 WL 393572 (N.D. Ill. 2022) ("Open communications to a classroom full of high school students cannot reasonably be described as private, as those students were free to repeat, record, and gossip about Plaintiff's comments."); *Marriott v. USD 204, Bonner Springs-Edwardsville*, 289 F. Supp. 3d 1235, 1240 (D. Kansas 2017) (students who disrobed in locked high school classroom entitled to no expectation of privacy); *Plock v. Bd. of Educ. of Freeport Sch. Dist. No. 145*, 545 F. Supp. 2d 755, 758 (N.D. Ill. 2007) ("A classroom is a public space….").[3]

The Opposition's reliance on *Multimedia WMAZ, Inc. v. Kubach*, 443 S.E.2d 491 (Ga. Ct. App. 1994) (Opp. at 4) is completely inapposite. *Kubach* involved a claim for public disclosure of private facts – *i.e.*, the defendant publicly disclosed that the plaintiff had contracted AIDS. In such cases, the protection afforded an individual's right to privacy may only be waived "to whatever degree and in

---

[3] *See also Joines v. State*, 591 S.E. 2d 454, 456 (Ga. Ct. App. 2003) ("no expectation of privacy in a publicly owned computer located in the classroom."); *Evens v. Superior Court*, 77 Cal. App. 4th 320, 324 (1999) ("A teacher must always expect 'public dissemination' of his or her classroom 'communications and activities.'"); *Roberts v. Houston Indep. Sch. Dist.*, 788 S.W.2d 107, 111 (Tex. Ct. App. 1990) ("a public classroom does not fall within the expected zone of privacy"). Under Georgia law, consent is not required when recording scenes in such public places. *See* Ga. Code Ann. § 16-11-62(2) (the recording of others without their consent is unlawful only in a "private place and out of public view"). Georgia courts "look[] to Fourth Amendment jurisprudence as a guide when interpreting the scope of privacy protected by [the statute]." *Nuckles v. State*, 853 S.E.2d 81, 87 (Ga. 2020). "What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection." *Katz v. U.S.*, 389 U.S. 347, 351 (1967).

whatever connection [his or her] life has ceased to be private." *Id.* at 709. Thus, the facts that plaintiff (a) previously appeared on a national TV show with his back shown undigitized and his voice undisguised, and (b) acknowledged his disease to about 60 family members, friends, medical personnel, and members of his AIDS support group (*id.* at 708-10) were found to not waive his claim arising from defendant's acts in televising his recognizable face and publicly revealing his AIDS diagnosis. *Id.* at 710; *cf. Cummings v. Walsh Constr. Co.*, 561 F. Supp. 872, 885 (S.D. Ga. 1983) (claim waived because plaintiff told co-workers about sexual affair).

In contrast, here Heller has pleaded a claim for misappropriation of likeness but not a claim for public disclosure of private facts (*see* Opp. at 2, fn. 2) – so the degree to which private and embarrassing information about her had "ceased to be private" is not at issue. In any event, Heller fully disclosed to a nationwide audience in the Podcast the details of her sexual abuse by Herron, and thereafter repeated her story to a classroom of UNG students. Thus, Heller's FAC is solely based on matters that already were "open to public observation" and thus are non-actionable.

B.    **Heller's Argument that Glass Waived the First Amendment is Unsupported by the FAC and the Applicable Case Law.**

Heller acknowledges that the First Amendment can be waived contractually and under state law promissory estoppel theories "upon clear and convincing evidence that the waiver is knowing, voluntary, and intelligent." Opp. at 12-13 (citing *Cohen v. Cowles Media Co.*, 501 U.S. 663 (1991) and *D.H. Overmyer Co. v.*

*Frick*, 405 U.S. 174, 185, 187 (1972)).  While not addressed in *Cohen*, such waivers of the First Amendment, as with waivers of all fundamental Constitutional rights, must be voluntary, knowing, and intelligent.  *D.H. Overmyer*, 405 U.S. at 185 and 187; *Fuentes v. Shevin*, 407 U.S. 67, 94-95 (1972); *Leonard v. Clark*, 12 F.3d 885, 889 (9th Cir. 1993), *as amended* (Mar. 8, 1994); *see also U.S. v. Teague*, 908 F.2d 752, 759 (11th Cir. 1990).  Moreover, such waivers must be established by "clear and compelling" evidence and may not be implied.  *Curtis Pub. Co. v. Butts*, 388 U.S. 130, 145 (1967); *Global Inds., Inc. v. Harris*, 376 F. Supp. 1379, 1382 (N.D. Ga. 1974) ("waivers of constitutional rights may not be implied."). Further, the Court need not even consider the validity of a waiver "when the contractual language relied upon does not, on its face, even amount to a waiver." *Fuentes*, 407 U.S. at 95.[4]

Here, the charging allegations of the FAC fail to plausibly allege that Glass knowingly, voluntarily and intelligently waived its First Amendment rights.

---

[4] The decision in *Cohen*, *supra*, does not address the need for clear and convincing evidence of a knowing, voluntary, and intelligent waiver of First Amendment rights. But this is because the plaintiff was "not seeking damages for injury to his reputation or his state of mind" that implicated constitutional safeguards. *Cohen*, 501 U.S. at 671. Further, the defendants' agreement to treat plaintiff as a confidential source was entirely unambiguous and undisputed. *Id.* at 665 ("Cohen made clear to the reporters that he would provide the information only if he was given a promise of confidentiality. Reporters from both papers promised to keep Cohen's identity anonymous…."). Thus, *Cohen* is not pertinent to a legal issue it did not address – *i.e.*, the "voluntary, knowing, and intelligent" requirement for waiving First Amendment rights. *See Sloan v. State Farm Mut. Auto. Ins. Co.*, 360 F.3d 1220, 1231 (10th Cir. 2004) ("[C]ases are not authority for propositions not considered.").

154884584.1

### 1.   It is Not Alleged Plausibly that Glass Waived its First Amendment Rights Under the Podcast Agreement.

The Opposition does not dispute that the entire so-called "Podcast Agreement" alleged in the FAC is contained in Exhibit "C." Opp. at 4 & fn. 3.[5] The recording reflects Heller's unrestricted consent to being recorded.  Dkt. No. 23 (Ex. "C") at 2:14 – 3:30. In fact, Heller eagerly replied "I do" to the query "Do you consent…" by executive producer Carolyn Hartman *before* Ms. Hartman even had a chance to complete her question by adding "…to having your voice recorded for this podcast today?" *Id*.   Heller's enthusiastic agreement to be recorded placed no restrictions on Glass's dissemination, republication, or other use of the recording.

Thus, there is no plausible basis for Heller's argument that the recording of the interview could only be used "solely" for the Podcast.  The word "solely" was never uttered by Heller or Ms. Hartman.  Instead, the so-called Podcast Agreement is merely a statement of consent from Heller.  It does not plausibly constitute a knowing, voluntary, and intelligent waiver of First Amendment rights by Glass.

### 2.   It is Not Alleged Plausibly that Glass Waived its First Amendment Rights Under the Docuseries Agreement.

As to the so-called "Docuseries Agreement," the only nonconclusory

---

[5] The authenticity of the sound recording of Heller's verbal consent to be recorded (Ex. "C" (Dkt. No. 23)) is not disputed in the Opposition, which merely notes in passing the acknowledged fact it "is not a complete recording of the pre-interview discussion."  Opp. at 4; *see also* Decl. of Carolyn Hartman, ¶ 6 (Dkt. No. 20-2).

154884584.1

allegation supporting Glass's alleged waiver of First Amendment rights in the FAC is the alleged lay legal opinion of Jenifer Faison that "we would never be able to use footage of you if you didn't sign a release." FAC ¶ 22.[6]   But this lay legal opinion contains no language of promise. Further, the Opposition tellingly ignores the principle that such lay legal opinions cannot be relied upon since "all persons are presumed to know the law." *Shea v. Best Buy Homes, LLC*, 533 F. Supp. 3d 1321, 1337 n. 10 (N.D. Ga. 2021); *Lakeside Invs. Grp., Inc. v. Allen*, 559 S.E.2d 491, 493 (Ga. Ct. App. 2002); *Howard v. Barron*, 612 S.E.2d 569, 572 (Ga. Ct. App. 2005); *Gignilliat v. Borg*, 205 S.E.2d 479, 480 (Ga. Ct. App. 1974).   The Opposition's silence on the issue is a concession that the Docuseries Agreement is unenforceable.[7]

---

[6] No other nonconclusory language of contract formation language is alleged in the FAC despite the Opposition's claim that the FAC's "allegations … make clear" that such an agreement was formed.  Opp. at 21.  "[O]n a motion to dismiss, courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Ogburn v. Chase Home Fin. LLC*, No. 1:11-CV-1856-TWT, 2011 WL 5599150, at *2 (N.D. Ga. Nov. 16, 2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 550 (2007)); *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1268 (11th Cir. 2009) ("unwarranted deductions of fact in a complaint are not admitted as true for the purpose of testing the sufficiency of plaintiff's allegations.").

[7] Further, Heller's claims of waiver by Glass of its First Amendment rights under the so-called Docuseries Agreement are in no way supported by Heller's allegations that Glass subsequently tried to get Heller to sign a written release pertaining to the Docuseries.  *See* Opp. at 7-10; FAC ¶¶ 32-37; *see also De Havilland v. FX Networks, LLC*, 21 Cal. App. 5th 845, 861 (2018) ("Producers of films and television programs may enter into agreements with individuals portrayed in those works for a variety of reasons, including … a desire to avoid litigation for a reasonable fee … [b]ut the First Amendment simply does not require such acquisition agreements."); *see also* Motion (Dkt. No. 31-1), Section I at pp. 13-14 & fn. 9.  Thus, Glass's conduct in

Thus, Heller's allegations concerning the so-called Docuseries Agreement – which contained no language of promise and amounted to nothing more than a lay legal opinion – did not plausibly constitute a knowing, voluntary, and intelligent waiver of First Amendment rights by Glass, especially as "waivers of constitutional rights may not be implied." *Global Inds.*, 376 F. Supp. at 1382.

## C.    The Docuseries is a Newsworthy Production of Public Interest.

The Opposition asserts that Heller's depiction in the Docuseries is not newsworthy or protected by the First Amendment because while "Herron's abuse of a high school student was newsworthy at one time, it was long since over by the time Glass interviewed Rachel for the … Podcast." Opp. at 16.  This argument is baseless. The grooming of teens for sexual abuse is clearly an issue of grave public interest.[8]

In addition, Heller's prosecution of her civil lawsuit against the school administrators who enabled Herron's improper conduct – *R.H. v. Wagner*, 879 S.E.2d 653 (Ga. Ct. App. 2022) – was also a continuing matter of public interest. *See*, *e.g.*, *Tucker v. News Pub. Co.*, 397 S.E.2d 499, 500-01 (Ga. App. 1990) (legal

---

subsequently seeking a signed release from Heller fails to show that there was a knowing, voluntary, and intelligent waiver of Glass's First Amendment rights or that any such written release from Heller was required legally.  *See also Global Inds.*, 376 F. Supp. at 1382 ("waivers of constitutional rights may not be implied.").

[8] The Opposition does not dispute that more than 4.5 million students – or nearly 1 in 10 – are subject to sexual misconduct by an employee of a school sometime between kindergarten and 12th grade.  *See* Motion (Dkt. No. 31-1) at p. 1, fn. 1.

9

proceedings are matters of public interest).   By voluntarily participating in the Podcast (along with her attorney in the civil lawsuit, Michael Rafi, who discussed her case in detail), Heller injected herself into the public eye – both as to her own abuse by Herron and as to the broader topic of the grooming of children for sexual abuse.  Heller admitted this, saying that she was seizing "a chance to in a way defend myself to the public eye with my own words."  Ex. "B" (Ep. 3 at 4:50-5:33); *see Johnson v. Freborg*, 995 N.W.2d 374, 386 (Minn. 2023) (holding that defendant's social media posts "for the safety of other women" were matters of public concern).

Because the Docuseries, which was released only 15 months after the Podcast (FAC, ¶¶ 15 and 47), is a timely, relevant, and newsworthy production of public interest that is also fully protected by the First Amendment, Heller's claims must be dismissed.  *See*, *e.g.*, *Toffoloni* 572 F.3d at 1208; *Somerson*, 956 F. Supp. 2d at 1366; *Tucker*, 397 S.E.2d at 500-01; *Brown v. Showtime Networks, Inc.*, 394 F. Supp. 3d 418, 440-41 (S.D.N.Y. 2019); *Thoroughbred Legends, LLC v. The Walt Disney Co.*, No. 1:07-CV-1275-BBM, 2008 WL 616253, at *11 (N.D. Ga. Feb. 12, 2008); *Daly v. Viacom, Inc.*, 238 F. Supp. 2d 1118, 1123 (N.D. Cal. 2002); *Nichols v. Moore,* 334 F. Supp. 2d 944, 955-56 (E.D. Mich. 2004), *aff'd* 477 F.3d 396 (6th Cir. 2006).[9]

---

[9] Additionally, Glass incorporates by reference the arguments urged by defendants ABC News and Hulu in Section II of their Reply Brief in support of their concurrently-pending Motion to Dismiss – which equally apply to Glass.

## II.   THE OPPOSITION FAILS TO ESTABLISH THAT COUNT TWO STATES A VIABLE BREACH OF CONTRACT CLAIM.

### A.   The Opposition Fails to Establish the Formation and Breach of the Podcast Agreement Alleged in the FAC.

The Opposition does not dispute that the construction and interpretation of the alleged Podcast Agreement (Ex. "C") may properly be considered by the Court on this Motion.[10]   Nonetheless, the Opposition interprets the phrase "for this podcast today" in connection with the so-called Podcast Agreement as a clause that means "solely for the Podcast."  Opp. at 18.   This construction is not plausible.  The sound check recording unambiguously reflects Heller's unrestrained consent to being recorded.  Heller even said "I do" before the phrase "for this podcast today" was ever uttered.  The word "solely" as in "solely for the Podcast" was never stated by anyone, and no restrictions were placed on Glass's dissemination, republication, or use of the recording.  Moreover, Heller's subjective after-the-fact interpretation of her consent cannot restrict Glass's rights, as only objective manifestations of intent are relevant. *See Frickey v. Jones*, 630 S.E.2d 374, 376 (Ga. 2006).[11]

---

[10] *See In re Beaulieu Grp., LLC,* No. 17-41677-BEM, 2021 WL 4469928, at *41 (Bankr. N.D. Ga. Sept. 29, 2021) ("Interpretation of a contract is a question of law such that it can be resolved on a motion to dismiss."); *S. Point Retail Partners, LLC v. N. Am. Prop. Atlanta, Ltd*., 696 S.E.2d 136, 139-40 (Ga. Ct. App. 2010) (interpreting language of a contract on a motion to dismiss); *Tims v. LGE Cmty. Credit Union*, 935 F.3d 1228, 1235 (11th Cir. 2019) (same).

[11] Importantly, only the recording of Heller speaking with Ms. Hartman, and not the allegations in the FAC or the arguments made in the Opposition, are controlling where, as here, the exhibit directly "contradict[s] the allegations of the complaint[.]"

Equally dispositive of this claim, the Opposition does not refute the FAC's failure to factually plead any form of recoverable damages flowing from the alleged breach of the Podcast Agreement. The FAC claims only an amount of damages to "be proven at trial." FAC ¶ 74. However, conclusory language that the plaintiff "has been damaged in an amount to be proven at trial" is routinely held insufficient to survive a motion under Rule 12(b)(6). [12] This issue of insufficiently pleading damages is not a mere formality here, as there exist no plausible contract-based damages that could flow to Heller from the rebroadcast in the Docuseries of the same information she admitted was consensually disseminated in the Podcast.

## B.    The Opposition Fails to Establish the Formation or Breach of the Docuseries Agreement Alleged in the FAC.

The FAC claims that the alleged "Docuseries Agreement" between Heller and Glass arose from an alleged statement made by Faison to Heller that "we would never be able to use footage of you if you didn't sign a release." FAC ¶ 22; *see also* fn. 6, *supra*. The Opposition, however, fails to refute the fact that at most Faison's statement constituted an unenforceable lay opinion concerning the legal effect of not

---

*See Schell v. Amendia, Inc.*, No. 1:17-CV-02761, 2019 WL 5617980, at *2 (N.D. Ga. Oct. 31, 2019); *Griffin Indus., Inc. v. Irvin,* 496 F.3d 1189, 1206 (11th Cir. 2007).

[12] *See, e.g., Jean-Pierre v. Bank of Am. Corp.*, No. 1:13-CV-1777-ODE-JSA, 2014 WL 12571425, at *4 (N.D. Ga. Apr. 3, 2014), *report and recommendation adopted*, No. 1:13-CV-1777-ODE-JSA, 2014 WL 12575747 (N.D. Ga. Apr. 28, 2014); *Lakeview Loan Servicing, LLC v. Mobley,* No. 1:16-cv-04572-MHC-LTW, 2019 WL 3502914 at *6 (N.D. Ga. June 4, 2019).

12

obtaining a future written release that was never consummated.  As noted above, such lay legal opinions are never a basis for legal redress because "all persons are presumed to know the law."  *See*, *e.g.*, *Shea*, 533 F. Supp. 3d at 1337 fn. 10; *Lakeside Invs. Grp.*, 559 S.E.2d at 493; *Howard*, 612 S.E.2d at 572; *Gignilliat*, 205 S.E.2d at 480. Similarly, "agreements to agree or preliminary statements of intent to contract in the future are unenforceable." *Fed. Paper Bd. Co. v. Harbert-Yeargin, Inc*., 92 F. Supp. 2d 1342, 1349–50 (N.D. Ga. 1998).  Dismissal is also proper because the FAC fails to plead any plausible breach of contract damages arising from the purported breach of the alleged Docuseries Agreement.  *See* Section II.A. at p. 12, *supra*.[13]

## III.  THE OPPOSITION FAILS TO ESTABLISH THAT COUNT THREE STATES A VIABLE CLAIM FOR SPECIFIC PERFORMANCE

For the reasons discussed above, the Opposition fails to adequately establish

---

[13] The Opposition also contends that Heller agreed to speak at UNG **before** learning that "Glass was going to film the presentations[.]" Opp. at 6.  While the Opposition claims that Heller's appearance at UNG "was consideration for the promise that Glass had made to her" (Opp. at 7) and that Glass sought a written release after Heller's UNG presentation (*id*. at 22-23), it is well-settled that prior agreements and conduct (*i.e.*, past consideration) cannot support the existence of a contract as they are not part of a bargained-for exchange. *Lee v. Choi*, 754 S.E.2d 371, 374 (Ga. Ct. App. 2013); *Whitmire v. Watkins*, 267 S.E.2d 6, 7 (Ga. 1980). Moreover, Heller's alleged conditional consent to be recorded was illusory and cannot constitute consideration as a matter of law, since any use of the recording by Glass is averred to have been solely at Heller's option.  *See Lambert v. Austin Ind*., 544 F.3d 1192, 1196 (11th Cir. 2008) ("where a party offers an illusory promise, a court will find inadequate consideration and deem the contract unenforceable."); *Kemira, Inc. v. Williams Investigative & Sec. Servs., Inc*., 450 S.E.2d 427, 431 (Ga. Ct. App. 1994) (promise illusory when "words of promise ... make performance entirely optional").

the existence or breach of either the Podcast Agreement or the Docuseries Agreement.   As the claim for Specific Performance is tied to Heller's deficient Breach of Contract claim, it should be dismissed for the same reasons.

## IV. THE OPPOSITION FAILS TO ESTABLISH THAT COUNT FOUR STATES A VIABLE CLAIM FOR PROMISSORY ESTOPPEL

The Opposition's reliance on *Cohen v. Cowles Media Co.*, *supra*, (Opp. at 12) has already been addressed.  *See* fn. 4 (and accompanying text), *supra*.  In summary, that case did not involve claims for tort remedies raising constitution issues and defendants' clear and express promises to maintain the confidentiality of plaintiff's name were undisputed.  *Id*.  In contrast, here the purported statement on which Heller supposedly relied – *i.e.*, "[w]e would never be able to use footage of you if you didn't sign a release" (FAC ¶ 22) – constitutes, at most, a lay legal opinion that could not reasonably have been relied upon by Heller as "all persons are presumed to know the law."  *See*, *e.g.*, *Shea*, 533 F. Supp. 3d at 1337 n. 10.  Moreover, although the Opposition baldly asserts that "[t]he agreement is clearly alleged in the [FAC]" (Opp. at 24), the FAC's conclusory allegations are "too vague and not sufficiently definite to support an action for promissory estoppel under Georgia law." *Georgia Oak Partners, LLC v. Stonehenge Partners, Inc.*, No. 1:20-CV-1163-MHC, 2020 WL 13594802, at *11 (N.D. Ga. Dec. 11, 2020).

The Opposition also does not remedy the FAC's failure to allege reliance damages.  Opp. at 24-25.  Rather, the Opposition argues that "[d]amages recoverable

under promissory estoppel are those damages as are equitable and necessary to prevent injustice from occurring." Opp. at 25. But this truism does not create an open-ended remedy.  This is because principles of equity and justice do not allow the plaintiff to collect "a windfall recovery." *Bethsaida Dev., Inc. v. Charter Land & Hous. Corp.*, 208 S.E.2d 462, 464 (Ga. 1974). Thus, "[t]he measure of damages for plaintiff's claim of promissory estoppel is the amount advanced [by plaintiff] … in reliance on defendant's promise…." *Christensen v. Intelligent Sys. Master Ltd. P'ship*, 399 S.E.2d 495, 496-97 (Ga. Ct. App. 1990); *accord Allied Vista, Inc. v. Holt*, 987 S.W.2d 138, 142 (Tex. App. 1999) ("for promissory estoppel, only reliance damages are allowed").  In any event, no promissory estoppel damages of any kind are alleged in the FAC; accordingly, the claim is deficient.

## V.   THE OPPOSITION FAILS TO ESTABLISH THAT COUNT SIX STATES A VIABLE CLAIM FOR PUNITIVE DAMAGES

The Opposition does not address Heller's failure to state viable claims for punitive damages.  *See* Motion at 24-25.  The Opposition's failure to dispute the issue is a concession that punitive damages are not recoverable against Glass.

## <u>CONCLUSION</u>

For the foregoing reasons, the FAC should be dismissed with prejudice and without leave to amend pursuant to Fed. R. Civ. P. Rule 12(b)(6).

15

Respectfully submitted this 28th day of February 2024.

/s/ David Aronoff
David Aronoff (admitted *pro hac vice*)
California Bar No. 125694
Joshua Bornstein (admitted *pro hac vice*)
California Bar No. 311658
**FOX ROTHSCHILD LLP**
10250 Constellation Blvd, Suite 900
Los Angeles, CA 90067
Telephone: (310) 598-4150
Facsimile: (310) 556-9828
DAronoff@FoxRothschild.com
JBornstein@FoxRothschild.com

and

/s/ *Elizabeth G. Brunette*
Elizabeth G. Brunette
Georgia Bar No. 560454
**FOX ROTHSCHILD LLP**
999 Peachtree Street NW, Suite 1500
Atlanta, Georgia 30309
Telephone: (404) 962-1000
Facsimile: (404) 962-1200
EBrunette@foxrothschild.com

*Attorneys for Defendant Glass Entertainment Group LLC*

16

## **CERTIFICATE OF COMPLIANCE**

The undersigned counsel hereby certifies that this **Reply Brief of Defendant Glass Entertainment Group LLC In Support of Motion To Dismiss First Amended Complaint** complies with the type-volume limitations set forth in Rule 5.1 of the Local Rules of the United States District Court for the Northern District of Georgia and that this has been typed in Times New Roman 14 count.

/s/ *David Aronoff*
David Aronoff (admitted *pro hac vice*)
California Bar No. 125694

17

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this day electronically submitted the foregoing **Reply Brief of Defendant Glass Entertainment Group LLC In Support of Motion To Dismiss First Amended Complaint** upon all counsel via email and the Court's CM/ECF system, which will automatically serve all counsel of record via email as follows:

Cary Ichter
James W. Hawkins
ICHTER DAVIS LLC
400 Interstate North Pkwy. SE
Suite 860
Atlanta, Georgia 30339
cichter@ichterdavis.com
jhawkins@ichterdavis.com
*Attorneys for Plaintiff*
*Rachel Heller*

Nathan Siegel
Marietta Catsambas
DAVIS WRIGHT TREMAINE LLP
1301 K Street NW
Suite 500 East
Washington, D.C. 20005
nathansiegel@dwt.com
mariettacatsambas@dwt.com
and
Amanda G. Hyland
TAYLOR ENGLISH DUMA LLP
1600 Parkwood Circle, Ste. 200
Atlanta, GA 30336
ahylnd@taylorenglish.com
*Attorneys for Defendants,*
*ABC News, Inc. and Hulu, LLC*

154884584.1

This 28th day of February 2024.

**Fox Rothschild LLP**

/s/ *David Aronoff*

David Aronoff (admitted *pro hac vice*)
California Bar No. 125694

*Attorney for Glass Entertainment Group LLC*

19

154884584.1