**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

RACHEL HELLER,         *
                                  *

         Plaintiff,          *
                                  *

     v.                    *         1:23-CV-04595-ELR
                                  *

ABC NEWS, INC., et al.,      *
                                  *

         Defendants.       *
                                  *

---

# O R D E R

---

There are several matters pending before the Court. The Court sets out its reasoning and conclusions below.

## I. Background[1]

In this case, Plaintiff Rachel Heller brings various claims against Defendants ABC News, Inc. ("ABC"), Glass Entertainment Group LLC ("Glass"), and Hulu, LLC, regarding the "unwanted intrusion and misappropriation of her image and likeness" in a three (3)-part docuseries that was produced by Defendants Glass and ABC and streamed by Defendant Hulu. See Am. Compl. pp. 1–4 [Doc. 28]. Plaintiff

---

[1] For purposes of the present motion only, the Court "accept[s] the allegations in the complaint as true and constru[es] them in the light most favorable to the plaintiff." Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003).

"was the innocent victim of repeated sexual abuse by Spencer Herron, one of her teachers, while she attended" Kell High School in Cobb County, Georgia. Id. at p. 1. "Plaintiff reported Herron's sexual abuse to authorities in Cobb County which led to Herron's arrest, conviction, and time served in prison." Id. at p. 2. "After Herron's arrest, Herron's then-wife, Jenifer [Faison], discovered that Herron had had sexual relations with approximately sixty (60) women during their seven (7) years of marriage." Id. "These and other facts regarding Plaintiff and [Faison's] ordeals led to a podcast series produced by Defendant Glass," which is titled "Betrayal" (the "Betrayal Podcast"). Id.

"During the production of the Betrayal Podcast," Defendant Glass asked to interview Plaintiff about her experiences with Herron "and to use some or all of a recording of her voice from that interview" for the podcast. Id. ¶ 9. On or about December 17, 2021, Defendant Glass presented Plaintiff with an appearance release (the "Podcast Appearance Release") that "would have given [Defendant] Glass considerable and extensive rights to the use of [Plaintiff's] name, voice, image, likeness, and biographical information[,]" had she signed it. Id. ¶ 12. But Plaintiff refused to agree to the Podcast Appearance Release because it struck her as too broad. Id. ¶ 13. Instead, Plaintiff reached an oral agreement with Defendant Glass (the "Podcast Agreement") that she would participate in the interview and allow it to be recorded "only upon [Defendant Glass' express agreement] that the audio

recording of the interview would be used *solely* for the podcast." Id. Defendant Glass "agreed to [Plaintiff's condition]" and the Podcast Agreement is "memorialized at the beginning of the recording of the interview[.]" Id.

The Betrayal Podcast was released in April 2022 and amassed millions of downloads. Id. ¶ 16. Defendants Glass and ABC thereafter decided to adapt the Betrayal Podcast into a TV docuseries (the "Docuseries") that would be streamed by Defendant Hulu. Id. ¶¶ 16–18. Faison, Herron's ex-wife, was "heavily involved" in the production of the Docuseries and "often acted" as Defendant Glass' agent. Id. ¶ 19–20.

Unrelated to the production of the Betrayal Podcast or Docuseries, the University of North Georgia ("UNG") invited Plaintiff and Faison "to give presentations on their respective ordeals involving [] Herron to a criminal justice class" at UNG on November 17, 2022 (the "UNG Presentation"). Id. ¶ 21. Approximately two (2) weeks before the UNG Presentation, Plaintiff met with Faison and learned from Faison that Defendant Glass planned to film the UNG Presentation for the Docuseries. Id. ¶ 22. During that meeting, Plaintiff expressed reluctance about being filmed, and Faison told Plaintiff that she should not be concerned because Plaintiff "would have the ultimate say as to whether the recording of her would be used" in the Docuseries. Id. Specifically, Faison told Plaintiff:

> [W]e [Faison and Defendant Glass] would never be able to use footage of you if you didn't sign a release. So, if we are at that event and the

camera like is getting a wide shot and you're in it or filming it, we should either, if you're not okay with them [Defendant Glass] filming it knowing that you hadn't made a decision, then we [Faison and Plaintiff] should split our speeches so maybe I'll come do mine and then you do yours just so we are not standing next to each other the whole time.

Id.

Defendant Glass was aware before the filming of the UNG Presentation that Plaintiff has not consented to Defendant Glass' use of her name, voice, image, or likeness in the Docuseries and that Faison had communicated that it was "safe" for Plaintiff "to go forth with filming" because Plaintiff would have the "ultimate say" regarding use of "her name, voice, image, or likeness" in the Docuseries. See id. ¶ 25. Plaintiff alleges that her conversation with Faison created an oral agreement (the "Docuseries Agreement") because she "would not have participated in the filming . . . if she had not been assured by Faison, acting as agent for [Defendant] Glass, that she was in full control of whether any of her [part of the] presentation would appear in the [] Docuseries." See id. ¶ 24. During the UNG Presentation, Defendant Glass filmed Plaintiff's presentation and filmed Faison's presentation in such a way that Plaintiff was not in the background or beside Faison during Faison's presentation. Id. This manner of filming "gave [Plaintiff] additional assurances that she would have the ultimate say as to whether [Defendant] Glass would use [Plaintiff's] name, voice, image, and likeness in the [] Docuseries." Id. ¶ 26.

Immediately after filming the UNG Presentation, Kayce McCue, a producer of the Docuseries, handed Plaintiff an "On-Camera Release and a Non-Exclusive License Agreement" for Plaintiff to sign "in the event she decided to permit [Defendant] Glass to use the filming of her presentation at UNG in the [] Docuseries." Id. ¶ 32. Plaintiff objected to several portions of that agreement, so McCue sent Plaintiff an amended agreement on December 6, 2022. Id. ¶ 33. Plaintiff declined to sign the amended agreement. See id. ¶¶ 34–36.

In two (2) different phone calls on December 21, 2022, and February 13, 2023, "McCue confirmed to [Plaintiff] that [Defendant] Glass would not use her voice, image, or likeness in the [] Docuseries unless [Plaintiff] agreed to such use in writing." Id. ¶ 35. First, during the December 21, 2022 call, Plaintiff told McCue that she did not want to participate in the Docuseries. Id. ¶ 38. The next day, McCue sent Plaintiff a text message that said, "I just wanted to say thank you for taking the time to speak with me the past few weeks, and to reiterate that I understand and respect your decision." Id. ¶ 39. Second, during the February 13, 2023 call, Plaintiff asked McCue if her interview from the Betrayal Podcast would be used in the Docuseries. Id. ¶ 40. McCue said the interview would only be used "if you are comfortable with that." Id. Plaintiff never gave permission to Defendant Glass to use her interview from the Betrayal Podcast in the Docuseries. Id.

Thereafter, Jon Hirsch, Senior Vice President & Executive Producer for Defendant Glass and Executive Producer and the Director of the Docuseries, "sent numerous text messages to [Plaintiff] trying to engage her in a conversation regarding the use of her voice, image, and likeness in the [] Docuseries, including the possibility of an interview." Id. ¶ 41. On March 14, 2023, Plaintiff sent Hirsch a text message that stated:

> I have been aware of your attempts to communicate with me and decided to take my time to respond.
>
> To put it simply, my decision to not participate in this production still stands.
>
> As a rape and sexual abuse victim, I hope that no one in my position would ever have to go through what you people put me through. I am on no one else's timeline but my own. I will not hop, skip, or jump for money, an interview, or some credit.
>
> Actions speak louder than words and the fact that I was notified last of any needed involvement in this production and on top of that giving me a deadline to speak about the rape and abuse I endured says all I need to know about this production. I also refuse to work with Jenifer Faison or any person who can look me in the eye and question if they were also groomed as an adult who went through a completely different set of circumstances than what my 15[-]year[-]old self had to go through and then tell me in my face that I was just "another woman" while pretending to care in front of the cameras.
>
> I do not consent to the following . . . being broadcasted or used in any manner whatsoever:
>
> • Any correspondence I have had with Jenifer Faison (recorded calls, texts, emails, etc.);

- Any correspondence between me and anyone else from this production including you and Kayce (recorded calls, texts, emails, etc.);
- Any footage/images taken of me from this production or from Jenifer Faison;
- Any intellectual property I had created including my powerpoint on Educator Sexual Misconduct;
- Any information I have shared with Jenifer Faison in particular regarding my case;
- I was groomed by Spencer Herron but I will not be manipulated by Jenifer Faison or anyone for that matter anymore.

Id. ¶ 42.

Nearly four (4) months later, on July 7, 2023, Hirsch responded to Plaintiff's text message with the following message: "I [] wanted to give you a heads up that a decision was made to include some of the publicly available materials regarding your story. This includes some of the [Betrayal P]odcast audio and a bit of the [UNG P]resentation." Id. ¶ 44. Less than one week later, on July 11, 2023, Defendant Hulu began streaming the Docuseries. Id. ¶ 47. Plaintiff was "prominently featured" in the Docuseries as well as Defendant Hulu's marketing of the same. Id. ¶ 48. Episode 3 of the Docuseries contains multiple video clips of Plaintiff speaking at the UNG Presentation, as well as multiple audio clips of Plaintiff's interview from the Betrayal Podcast. [See Doc. 23, Exhibit A].[2]

---

[2] "In ruling upon a motion to dismiss, the district court may consider an extrinsic document if it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged." SFM Holdings, Ltd. v. Banc of Am. Sec., LLC, 600 F.3d 1334, 1337 (11th Cir. 2010). Here, Defendant Glass filed electronic copies of the Betrayal Podcast and Docuseries. [See Doc. 23, Exhibits A–B]. Plaintiff does not challenge the authenticity of these files and they are central to her claims. See generally Am. Compl.; [Doc. 33]. Thus, it is proper for the Court to consider them at this juncture.

On October 9, 2023, Plaintiff initiated the instant case.  See Compl. [Doc. 1].

Defendant Glass filed a motion to dismiss on December 4, 2023, and Defendants

ABC and Hulu filed a separate motion to dismiss that same day.  [Docs. 20, 22].

Thereafter, Plaintiff timely filed an Amended Complaint.[3]  See Am. Compl.  By her

Amended Complaint, Plaintiff brings a claim against all Defendants for

appropriation of her likeness.  See Am. Compl. ¶¶ 50–62.  She also brings claims

for breach of contract, specific performance, and promissory estoppel against

Defendant Glass stemming from both the alleged Podcast Agreement and

Docuseries Agreement.  Id. ¶¶ 63–92.  Additionally, Plaintiff alleges a claim for

unjust enrichment claim against Defendants ABC and Hulu.  Id. ¶¶ 93–95.  Plaintiff

seeks injunctive relief, "damages in amounts to be proven at trial," punitive

damages, and attorneys' fees against all Defendants.  Id. ¶¶ 96–97.  Plaintiff alleges

this Court has subject matter jurisdiction over this matter because the action is

---

[3] Because the Amended Complaint supersedes Plaintiff's original Complaint, the Court denies
Defendants' motions to dismiss the original Complaint as moot.  [Docs. 20, 22]; Fritz v. Standard
Sec. Life Ins. Co. of N.Y., 676 F.2d 1356, 1358 (11th Cir. 1982) ("an amended complaint
supersedes the original complaint").

between citizens of different states and the amount in controversy exceeds $75,000.[4]
Id. ¶ 5.

On January 17, 2024, Defendant Glass filed its "Motion to Dismiss the Amended Complaint" [Doc. 31] and Defendants ABC and Hulu filed their "Motion to Dismiss the Amended Complaint." [Doc. 32]. Plaintiff timely opposed both motions. [Docs. 33, 34]. Having been fully briefed, Defendants' motions are ripe for the Court's review. The Court begins with the relevant legal standard.

## II. Legal Standard

To survive a Rule 12(b)(6) motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Put differently, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." See id. This so-called "plausibility standard" is not akin to a probability requirement; rather, the plaintiff must allege

---

[4] Plaintiff incorrectly alleges the relevant Parties' citizenships. See, e.g., Am. Compl. ¶¶ 1, 3 (alleging that Plaintiff "resides" in Georgia and that Defendant Glass is a "domestic limited liability company formed and existing under the laws of Pennsylvania"). Thus, the Court directs Plaintiff to file a notice on the docket within fourteen (14) days properly alleging diversity jurisdiction at the conclusion of this order. See Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C., 374 F.3d 1020, 1022 (11th Cir. 2004) ("To sufficiently allege the citizenship [of a LLC,] a party must list the citizenships of all the members of the limited liability company."); Taylor v. Appleton, 30 F.3d 1365, 1367 (11th Cir. 1994) ("Citizenship, not residence, is the key fact that must be alleged in the complaint to establish diversity for a natural person."); King v. Cessna Aircraft Co., 505 F.3d 1160, 1171 (11th Cir. 2007) ("Where, as here, the plaintiff asserts diversity jurisdiction, [she] has the burden to prove that there is diversity.").

sufficient facts such that it is reasonable to expect that discovery will lead to evidence supporting the claim. See id.

When considering a Rule 12(b)(6) motion to dismiss, the Court must accept as true the allegations set forth in the complaint, drawing all reasonable inferences in the light most favorable to the plaintiff. See Twombly, 550 U.S. at 555–56; United States v. Stricker, 524 F. App'x 500, 505 (11th Cir. 2013) (per curiam). Even so, a complaint offering mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" is insufficient. See Ashcroft, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555); accord Fin. Sec. Assur., Inc. v. Stephens, Inc., 500 F.3d 1276, 1282–83 (11th Cir. 2007). Rather, "a pleading must contain a short and plain statement of the claim showing that the pleader is entitled to relief" so as to satisfy "the pleading requirements of Rule 8." See Parker v. Brush Wellman, Inc., 377 F. Supp. 2d 1290, 1294 (N.D. Ga. 2005) (citing FED. R. CIV. P. 8(a)(2)).

## III. Discussion

The Court begins with Defendant Glass' arguments to dismiss Plaintiff's breach of contract claims[5] before turning to Defendants' arguments related to Plaintiff's claims for specific performance, promissory estoppel, appropriation of likeness, unjust enrichment, and punitive damages.[6]

---

[5] In the Amended Complaint, Plaintiff alleges a single count of Breach of Contract related to two (2) separate agreements: the Podcast Agreement and the Docuseries Agreement. Am. Compl. ¶¶ 63–75. She does the same for her Specific Performance and Promissory Estoppel counts. Id. ¶¶ 76–92. In doing so, Plaintiff has committed the "sin of not separating into a different count each cause of action or claim for relief." See Weiland v. Palm Beach Cnty. Sheriff's Off., 792 F.3d 1313, 1323 (11th Cir. 2015); see also FED. R. CIV. P. 10(b) ("If doing so would promote clarity, each claim founded on a separate transaction or occurrence . . . must be stated in a separate count[.]"). However, the Court does not find that this deficiency is fatal to Plaintiff's Amended Complaint such that it must *sua sponte* direct Plaintiff to replead. Rather, the Amended Complaint "give[s] the defendants adequate notice of the claims against them and the grounds upon which each claim rests." See Weiland, 792 at 1323; [See Doc. 31-1 at 16] (Defendant Glass arguing the Court "should treat each alleged breach as a separate claim" and addressing them separately in its motion to dismiss). Thus, the Court analyzes Plaintiff's claims regarding the Podcast Agreement and the Docuseries Agreement separately. See, e.g., Bickerstaff Clay Prod. Co. v. Harris Cnty., Ga. By & Through Bd. of Comm'rs, 89 F.3d 1481, 1484 n.4 (11th Cir. 1996) (construing a complaint to present discrete claims for relief).

[6] The Court notes that Defendant Glass and Plaintiff purport to incorporate by reference sections of other briefs filed in this case in their instant filings. [See Docs. 33 at 17; 34 at 2; 36 at 10 n.9]. The Court echoes another judge in this district by stating "[t]his presentation of the issues is problematic for at least two reasons." Biedermann v. Ehrhart, Civil Action No. 1:20-CV-01388-JPB, 2021 WL 1061794, at *1 (N.D. Ga. Mar. 19, 2021). First, "it complicates the Court's review and understanding of the issues, especially where, for example, the cross-reference is merely to" vague portions of other briefs, such that "[t]he Court is left to guess as to which arguments or sections of the respective brief [the Party] refers[, and t]here is also no effort to distinguish whether the cases cited in one brief may be equally applicable to a different issue with a potentially different standard." Id. Second, the cross-referencing results in the briefs exceeding the applicable page limits established by this Court's Local Rules. See id.; LR 7.1(D), NDGa. Nevertheless, in the interest of an expedient resolution of this matter, the Court has reviewed the Party's respective briefs and arguments. The Court directs the Parties to abstain from this practice in the future.

## A.     Breach of Contract

Defendant Glass moves to dismiss Plaintiff's breach of contract claims as to the alleged Podcast Agreement and Docuseries Agreement for failure to allege any recoverable damages flowing from those agreements.[7] To assert a claim for breach of contract under Georgia law, a plaintiff must show: "(1) a valid contract, (2) a material breach of its terms, and (3) resultant damages to the party who has the right to complain about the breached contract." Frone v. JP Morgan Chase & Co., 695 F. App'x 468, 470 (11th Cir. 2017). Applying Georgia law, the Eleventh Circuit has held that "failure to sufficiently plead damages is dispositive," resulting in the dismissal of breach of contract claims. See id.

Regarding both the Podcast Agreement and the Docuseries Agreement, Plaintiff alleges (1) she was "harmed" by Defendant Glass' breaches, (2) she "has suffered irreparable harm" from Defendant Glass' breaches, and (3) "[t]o the extent that" Plaintiff's harm from Defendant Glass' breaches of those agreements "may be calculated, the monetary amount of [Plaintiff's] harm will be proven at trial." Am. Compl. ¶¶ 72–24. Plaintiff does not respond to or otherwise dispute Defendant

---

[7] Defendant Glass also raises several arguments to dismiss Plaintiff's breach of contract claims based on the supposed non-existence and unenforceability of the contracts at issue. [See generally Doc. 31-1]. The Court addresses those arguments in its discussion of Plaintiff's specific performance and promissory estoppel claims.

Glass' argument that such allegations are conclusory and insufficient to state a claim for breach of contract.[8] [See generally Doc. 33].

Upon review and consideration, the Court agrees with Defendant Glass that Plaintiff fails to sufficiently allege damages flowing from the alleged breaches of either the Podcast Agreement or the Docuseries Agreement. The Amended Complaint is devoid of non-conclusory allegations that Plaintiff suffered pecuniary damages resulting from any purported breach of contract by Defendant Glass. See generally Am. Compl.; see, e.g., Jean-Pierre v. Home Am. Mortg., Inc., Civil Action No. 1:13-CV-1777-ODE-JSA, 2014 WL 12857984 (N.D. Ga. Jan. 22, 2014) (dismissing breach of contract claim where plaintiff only alleged damages "in an amount to be proven at trial"), report and recommendation adopted, 2014 WL 12859278 (Mar. 4, 2014); see also Bank of Am., N.A. v. Corporex Realty & Inv., LLC, 875 F. Supp. 2d 689, 704 (E.D. Ky. 2012) ("'Merely claiming to have suffered damages, without more, epitomizes conclusory pleading' and is insufficient"); Int'l Bus. Machs. Corp. v. Dale, No. 7:11-cv-951, 2011 WL 4012399, *2 (S.D.N.Y. Sept. 9, 2011) ("[A]n allegation that [a claimant] 'suffered damages' without particular facts as to how she was damaged does not satisfy Twombly and Iqbal."); Frone, 695

---

[8] "[W]hen an argument is raised that a claim is subject to dismissal, and the non-moving party fails to respond to such an argument, such claims are deemed abandoned." Kijera v. Nielsen, Civil Action No. 1:18-CV-04100-ELR, 2019 WL 13213917, at *1 (N.D. Ga. Apr. 16, 2019) (collecting cases). Nonetheless, the Court still considers the merits of Defendant Glass' arguments. See, e.g., Giummo v. Olsen, 701 F. App'x 922, 924–25 (11th Cir. 2017).

F. App'x at 470. Further, to the extent Plaintiff seeks damages for "irreparable harm" such as emotional distress, those damages are not recoverable pursuant to a breach of contract claim.[9] See Cummings v. Prudential Ins. Co. of Am., 542 F. Supp. 838, 841 (S.D. Ga. 1982) ("In Georgia, damages for mental suffering arising out of a breach of contract, absent a concomitant breach of a duty independent of the contract, are not recoverable."). Thus, because Plaintiff alleges no facts showing that she suffered damages as a result of Defendant Glass' purported breach of the Podcast Agreement or Docuseries Agreement, her breach of contract claims are due to be dismissed. See Frone, 695 F. App'x at 470 ("While a court is required to accept well-pleaded facts as true at this stage, it is not required to accept the plaintiff's legal conclusions. It is insufficient for the plaintiff's complaint to put forth merely labels, conclusions, and a formulaic recitation of the elements of the cause of action.").

## B. Specific Performance

Defendant Glass contends that Plaintiff's specific performance claims as to the Podcast Agreement and Docuseries Agreement fail as a matter of law because the Amended Complaint does not "adequately establish the existence or breach of

---

[9] In relation to her breach of contract claims, Plaintiff also alleges that she is entitled to recover attorneys' fees and litigation costs because Defendant Glass acted in bad faith and caused Plaintiff unnecessary trouble and expense. See Am. Compl. ¶ 75. However, Plaintiff's claim for attorneys' fees and litigation costs are considered "wholly ancillary" and "not included within the ordinary species of damages." Alea London Ltd. v. Am. Home Servs., Inc., 638 F.3d 768, 780 (11th Cir. 2011) (collecting cases). Thus, Plaintiff's claim for attorneys' fees and litigation costs fails to adequately allege the "resultant damages" necessary to state a claim for breach of contract. See id.; Frone, 695 F. App'x at 470.

either" agreement.[10]  [Docs. 31-1 at 22–23; 36 at 13].  "Specific performance is an

equitable remedy available when the damages recoverable at law would not be an

adequate compensation for nonperformance" of an enforceable contract.  U.S. Bank,

Nat'l Ass'n as Tr. of Cabana Series IV Tr. v. Carrington Mortg. Servs., LLC, 2022

WL 2062651, at *4 (Ga. Ct. App. June 8, 2022) (citing Simpson v. Pendergast, 659

S.E.2d 716 (Ga. Ct. App. 2008)); see Hibbard v. McMillan, 645 S.E.2d 356, 359

(Ga. Ct. App. 2007) ("A contract upon which specific performance is sought must

be certain, definite, and clear; and so precise in its terms that neither party can

reasonably misunderstand it.").  In such cases, the Court may "order the parties to

specifically perform [a contractual] obligation."  Id.  The Court addresses the

Podcast Agreement and Docuseries Agreement in turn.

    1.   The Podcast Agreement

As a preliminary matter, the Court must establish what materials it may

properly consider regarding the Podcast Agreement.  Defendant Glass contends that

the Court should consider an audio recording (the "Sound Check Recording") that it

---

[10] In a footnote, Defendant Glass makes a passing argument that specific performance of either purported contract is impracticable since the Docuseries is already streaming on Hulu.  [Doc. 31-1 at 23 n.15].  Because Defendant Glass only raises this argument in a footnote in its motion to dismiss brief, the Court is not required to consider it.  See, e.g., Pinson v. JPMorgan Chase Bank, Nat'l Ass'n, 942 F.3d 1200, 1209 n.5 (11th Cir. 2019) ("We do not ordinarily consider arguments raised in passing in one footnote rather than the body of the brief."); Fitzpatrick v. Koch Foods of Ala., LLC, No. 2:19-CV-553-JTA, 2023 WL 3937421, at *14 (M.D. Ala. June 9, 2023); Doe v. Embry-Riddle Aeronautical Univ., Inc., No. 6:20-CV-1220-WWB-LRH, 2021 WL 2814905, at *2 (M.D. Fla. May 28, 2021).

submitted to the Court as an attachment to its original motion to dismiss. [See Docs. 20-3; 23, Exhibit C; 31-1 at 19]. Defendant Glass asserts that the Sound Check Recording is a true and correct digital copy of the recording that Plaintiff references in her allegation that the Podcast Agreement is "memorialized at the beginning of the recording of [her] interview, which is presumably in [Defendant Glass'] possession."[11] [See Doc. 31-1 at 19]; Am. Compl. ¶ 13.

Ordinarily, if a court "considers materials outside of the complaint, [it] must convert the motion to dismiss into a summary judgment motion." SFM Holdings, 600 F.3d at 1337. "There is an exception, however, to this general rule. In ruling upon a motion to dismiss, the [] court may consider an extrinsic document if it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged." Id. "A plaintiff can dispute the authenticity of a document simply by saying that the proffered document is not the one referred to in [her] complaint." Kalpakchian v. Bank of Am. Corp., 832 F. App'x 579, 583 (11th Cir. 2020).

Here, Plaintiff contends that the Sound Check Recording submitted by Defendant Glass "is not a complete recording of the pre-interview discussion

---

[11] Along with the Sound Check Recording, Defendant Glass submits a declaration by Carolyn Hartman, Executive Producer of the Betrayal Podcast, whereby she avers the Sound Check Recording is a true and correct digital copy of Plaintiff's sound check. See Declaration of Carolyn Hartman ¶ 6 [Doc. 20-2]. Hartman avers that after several minutes, the recording stopped so that the sound engineer could review the audio quality, and then a separate, new digital audio file was created that contains Plaintiff's actual interview. Id. Defendant Glass only proffers the Sound Check Recording and not the full recording of Plaintiff's interview. See id.

between [Defendant] Glass and [Plaintiff]." [Doc. 33 at 4 n.3]. According to the Amended Complaint, "at the beginning of the recording of the interview" between Plaintiff and Defendant Glass, Defendant Glass expressly agreed that the audio recording would be used "solely" for the Betrayal Podcast. Am. Compl. ¶ 13. No such express agreement is contained in the Sound Check Recording. [See Doc. 23, Exhibit C]. Because Plaintiff disputes that the Sound Check Recording reflects the entirety of her discussion with Defendant Glass, the Court finds that Plaintiff sufficiently disputes the authenticity of the Sound Check Recording. See Kalpakchian, 832 F. App'x at 583; Horsley v. Feldt, 304 F.3d 1125, 1135 (11th Cir. 2002) (declining to consider defendant's proffered transcripts when those transcripts did not contain the "statements the complaint insists that [plaintiff] made" because "for all we know at this stage those statements were left out of the excerpts"). Thus, the Court does not consider the Sound Check Recording at this procedural juncture.

Having established that the Sound Check Recording is not presently within the scope of the Court's review, the Court now addresses Defendant Glass' argument that Plaintiff fails to adequately allege the existence and any breach of the Podcast Agreement. Plaintiff alleges that she agreed to participate in the recorded interview for the Betrayal Podcast and "only upon [Defendant Glass' express agreement] that the audio recording [] would be used *solely* for the [Betrayal P]odcast." Am. Compl. ¶ 13. Defendant Glass allegedly "agreed to [Plaintiff's condition]" as "memorialized

at the beginning of the recording of the interview[.]" Id. In the instant motion to dismiss, Defendant Glass relies entirely on the Sound Check Recording (which the Court declines to consider at this juncture) to argue that the Podcast Agreement "did not place any limitations on [Defendant Glass'] right to use the taped interview." [See, e.g., Doc. 31-1 at 18]. However, because the Court declines to consider the Sound Check Recording and must take Plaintiff's allegations as true and construe them in the light most favorable to Plaintiff, the Court rejects Defendant Glass' position. Hill, 321 F.3d at 1335. Defendant Glass offers no other meaningful contentions in support of dismissing Plaintiff's claim for specific performance based on the Podcast Agreement. Thus, the Court denies Defendant Glass' motion to dismiss Plaintiff's claim for specific performance as to the Podcast Agreement.

### 2. The Docuseries Agreement

Next, Defendant Glass argues Plaintiff fails to sufficiently allege that the Docuseries Agreement is enforceable. [See Doc. 31-1 at 20–23]. Pursuant to O.C.G.A. § 13-3-1, a valid contract includes three (3) elements: (1) subject matter of the contract; (2) consideration; and (3) mutual assent by all parties to all contract terms. Thompson v. Floyd, 713 S.E.2d 883, 890 (Ga. 2011). To allege an enforceable agreement, a complaint

> must set forth a contract of such certainty and completeness that either party may have a right of action upon it. The requirement of certainty extends not only to the subject matter and purpose of the contract, but also to the parties, consideration, and even the time and place of

performance where these are essential.  A contract cannot be enforced in any form of action if its terms are incomplete or incomprehensible.

Freebirds LLC v. Coca-Cola Co., 883 S.E.2d 388, 395 (Ga. Ct. App. 2023); see Super Valu Stores, Inc. v. First Nat. Bank of Columbus, Ga., 463 F. Supp. 1183, 1193 (M.D. Ga. 1979) ("For oral contracts to be enforceable under Georgia law it must be shown that there was a meeting of the minds of the contracting parties mutuality as to every essential element of the oral agreement.").

Here, the Amended Complaint sets forth the following allegations.  Plaintiff "expressed reluctance" about being filmed for the Docuseries when she met with Faison on November 5, 2022.  Am. Compl. ¶ 22.  As a result, Faison told Plaintiff she "should not be concerned because [Plaintiff] would have the ultimate say as to whether the recording of [Plaintiff] would be used in the [] Docuseries."  Id. "Faison's representation that [Plaintiff] would have the ultimate say as to whether she would appear in the [] Docuseries led [Plaintiff] to go forward with the filming" of the UNG Presentation.  Id. ¶ 23.  Plaintiff "would not have participated in the filming at UNG if she had not been assured" by Faison "that she was in full control of whether any of her presentation would appear in the [] Docuseries."  Id. ¶ 24. Plaintiff alleges that Defendant Glass was aware of "Faison's representation to [Plaintiff] that it was safe for [Plaintiff] to go forth with the filming because [Plaintiff] would have the ultimate say" regarding her appearance in the Docuseries." Id. ¶ 28.

In her response to Defendant Glass' motion to dismiss, Plaintiff contends that Faison's statements constituted an "offer" by Defendant Glass to Plaintiff to the "unfettered right to decline her permission for [Defendant] Glass to use" the filmed UNG Presentation in the Docuseries. [Doc. 33 at 22]. In support, she cites case law stating that "[a]n offer is the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it" and "an offeror is the master of his or her offer, and free to set the terms thereof." [Id.] (citing Rakusin v. Radiology Assocs. of Atlanta, P.C., 699 S.E.2d 384, 388 (Ga. Ct. App. 2010) and Atkinson v. Cook, 518 S.E.2d 413, 414 (Ga. 1999)).

The Court disagrees with Plaintiff. Reading the Amended Complaint in the light move favorable to Plaintiff, Defendant Glass, through Faison (acting as its agent), promised Plaintiff "the ultimate say" as to whether the recording of her would be used in the Docuseries. Am. Compl. ¶ 22. That promise was not expressly contingent on any act or promise by Plaintiff. See generally id. "It is axiomatic that a contract without consideration is invalid." State v. Fed. Def. Program, Inc., 882 S.E.2d 257, 279 (Ga. 2022). "[C]onsideration must be stated in the contract or at least be ascertainable from the contract." Newell Recycling of Atlanta, Inc. v. Jordan Jones & Goulding, Inc., 731 S.E.2d 361, 364 (Ga. Ct. App. 2012); Freebirds, 883

S.E.2d at 395 ("Consideration" is an "essential term" of any alleged agreement that "must be certain.").

As relevant here, one form of consideration is bargained-for performance of an act. See O.C.G.A. § 13-3-42. However, "performance of an act" is only considered "bargained-for" if it is *sought* by the promisor (here, Defendant Glass) and given by the promisee (here, Plaintiff) in *exchange* for that promise. See id.; see also Fed. Def. Program, 882 S.E.2d at 279. Absent a bargained-for exchange, a promise is gratuitous and unenforceable. See Gotel v. Carter, No. 21-14030, 2022 WL 433704, at *3–4 (11th Cir. Feb. 14, 2022) (applying Georgia law and affirming dismissal of complaint where plaintiff did not allege what she "promised or agreed to do or to forbear from doing" in exchange for defendant's promise of payment, further noting that plaintiff "did not allege sufficient facts—such as discussions, negotiations, bargained-for terms, or the specific conditions upon which she and [defendant] entered the contract—from which a court could reasonably infer the existence of a valid contract").

In her response brief, Plaintiff appears to imply that Defendant offered her an "unfettered right to decline her permission" for Defendant Glass to use the footage of the UNG Presentation *in exchange for* her participation in the filming itself, but the Amended Complaint itself is devoid of any such allegation. See generally Am. Compl. Put differently, the Amended Complaint fails to allege that Defendant Glass

made a "manifestation of willingness to enter into a bargain" because it does not state what Plaintiff agreed to tender in exchange for Defendant Glass' promise. See Rakusin, 699 S.E.2d at 388. Because the terms of any purported Docuseries Agreement between Defendant Glass and Plaintiff are "incomplete," the Court cannot enforce it. See Freebirds, 883 S.E.2d at 395; Gotel, 2022 WL 433704, at *4. Thus, Plaintiff's claim for specific performance based on the supposed Docuseries Agreement is due to be dismissed. See Hibbard, 645 S.E.2d at 359 ("A contract upon which specific performance is sought must be certain, definite, and clear; and so precise in its terms that neither party can reasonably misunderstand it."); Found. for Lost Boys v. Alcon Ent., LLC, No. 1:15-CV-00509-LMM, 2016 WL 4394486, at *14 (N.D. Ga. Mar. 22, 2016) ("Where material terms are left to later negotiation, or are otherwise uncertain, an oral contract is unenforceable."). Therefore, the Court grants Defendant Glass' motion to dismiss on this issue.

## C. Promissory Estoppel

As an alternative to her breach of contract claims, Plaintiff seeks "damages and other relief" against Defendant Glass pursuant to a theory of promissory estoppel. See Am. Compl. ¶¶ 81–91. Defendant Glass moves to dismiss Plaintiff's promissory estoppel claims because (1) Plaintiff does not allege reliance damages and (2) Faison's promise regarding the so-called Docuseries Agreement (hereinafter

referred to as the "Docuseries Promise") is a lay legal opinion "that could not reasonably have been relied upon by [Plaintiff]."[12] [Doc. 31-1 at 23–24].

The Court finds Defendant Glass' first argument regarding reliance damages unavailing. To state a claim for promissory estoppel, a plaintiff must allege that:

> (1) [defendant] made a promise or promises; (2) [defendant] should have reasonably expected [plaintiff] to rely on such promise; (3) [plaintiff] relied on such promise to their detriment; and (4) an injustice can only be avoided by the enforcement of the promise, because as a result of the reliance, [plaintiff] changed [her] position to [her] detriment by surrendering, forgoing, or rendering a valuable right.

Woodstone Townhouses, LLC v. S. Fiber Worx, LLC, 855 S.E.2d 719, 733 (Ga. Ct. App. 2021). Defendant Glass does not offer—nor does the Court locate—any binding authority that requires a plaintiff to allege "reliance damages" to state a claim for promissory estoppel.[13] To the contrary, the Georgia Court of Appeals has

---

[12] In a single sentence in its reply brief, Defendant Glass also argues, for the first time, that the Docuseries Promise is "too vague and not sufficiently definite to support an action for promissory estoppel under Georgia law." [Doc. 36 at 14]. However, the Court does not consider that argument at this juncture. See Rindfleisch v. Gentiva Health Servs., Inc., 22 F. Supp. 3d 1295, 1301 (N.D. Ga. 2014) ("As a general rule, federal courts do not consider arguments that are presented for the first time in a reply brief." (citing Herring v. Sec'y, Dep't of Corrections, 397 F.3d 1338, 1342 (11th Cir.2005))).

[13] The only Georgia case Defendant Glass offers on this point, Christensen v. Intelligent Systems Master Limited Partnership, is unpersuasive. In Christensen, the Georgia Court of Appeals affirmed a jury verdict awarding plaintiff $166,666.66 on plaintiff's claim of promissory estoppel. 399 S.E.2d 495, 496–97 (Ga. Ct. App. 1990). In doing so, the Georgia Court of Appeals stated that "[t]he measure of damages for plaintiff's claim of promissory estoppel is the amount advanced for operating funds in reliance on defendant's promise to execute the sale agreement and reimburse plaintiff as part of the payment." Id. But the foregoing dicta merely describes the facts of that case and does not support Defendant Glass' sweeping proposition that only "reliance damages" are available for promissory estoppel claims pursuant to Georgia law. Indeed, Christensen has only been cited in seven (7) cases since 1990—and never for the proposition that Defendant Glass states. [See Docs. 31-1 at 24; 36 at 14–15].

held that "[d]amages recoverable under promissory estoppel are those damages as are equitable and necessary to prevent injustice from occurring" with no express limitation to only reliance damages. <u>See</u> <u>Rental Equip. Grp., LLC v. MACI, LLC</u>, 587 S.E.2d 364, 369 (Ga. Ct. App. 2003). Accordingly, the Court rejects Defendant Glass' argument to dismiss Plaintiff's promissory estoppel claims on that basis. <u>See</u> <u>Ridgeline Cap. Partners, LLC v. MidCap Fin. Servs., LLC</u>, 340 F. Supp. 3d 1364, 1371 n.3 (N.D. Ga. 2018) (noting that although defendant's arguments related to promissory estoppel and reliance damages appeared to have merit, it was "premature and insufficient to support dismissal of a promissory estoppel claim at the motion to dismiss stage").

Second, the Court is unmoved by Defendant Glass' argument as to the Docuseries Promise that Plaintiff could not "reasonably rely" on a "lay legal opinion." [Doc. 31-1 at 23–24]. Defendant Glass claims that Faison's statement to Plaintiff that "[w]e would never be able to use footage of you if you didn't sign a release" constitutes a lay legal opinion and therefore "could not reasonably have been relied upon by [Plaintiff] given that 'all persons are presumed to know the law.'" [<u>See, e.g.</u>, Doc. 31-1 at 24]. But Defendant Glass misses the mark. Plaintiff does not allege she relied on that statement; rather, she specifically alleges that she relied on Faison's statement that "[Plaintiff] would have the ultimate say as to

whether the recording of her would be used in the [] Docuseries."[14] See Am. Compl. ¶¶ 22–24. In sum, Defendant Glass, through its alleged agent, Faison, promised that Plaintiff she would have the "ultimate say" as to use of the UNG Presentation footage in the Docuseries, and Plaintiff claims she relied on that promise to her detriment. The Court finds these allegations sufficient to state a claim for promissory estoppel as to the Docuseries Agreement. See Woodstone Townhouses, 855 S.E.2d at 733; Am. Compl. ¶¶ 81–91. Accordingly, the Court denies Defendant Glass' motion to dismiss Plaintiff's promissory estoppel claims.

### D.    Appropriation of Likeness

The Court next turns to Plaintiff's claim for appropriation of likeness. Plaintiff alleges that, by using her voice from the Betrayal Podcast interview in the Docuseries without her consent, Defendants appropriated her voice for their own commercial gain. Am. Compl. ¶¶ 51–52. She also alleges that by using her voice, image, and likeness from the footage of the UNG Presentation without her consent, Defendants appropriated her voice, image, and likeness for their own commercial gain. Id. ¶¶ 53–54. Defendants advance three (3) independent arguments in their motions to dismiss this claim. [See generally Docs. 31-1, 32-1]. First, Defendants argue that the First Amendment bars Plaintiff's claim because the Docuseries is a

---

[14] Even if Plaintiff did rely on the above statement identified by Defendant Glass, the Court is unconvinced that a "lay legal opinion" would render Plaintiff's reliance unreasonable. The cases Defendant Glass cites regarding lay legal opinions all pertain to misrepresentation or fraud claims, which are inapposite to Plaintiff's promissory estoppel claims. [See Docs. 31-1 at 22; 36 at 8].

newsworthy production of public interest.  [See Docs. 31-1 at 11–13; 32-1 at 11–16].    Second, Defendants argue that Plaintiff's claim is barred because the Docuseries is an expressive work.  [See Docs. 31-1 at 12 n.7, 14; 32-1 at 16–18].  Third, Defendants contend that Plaintiff's claim fails because no right of privacy or publicity attaches to subject matter that is open to public observation.  [See Docs. 31-1 at 12–13; 32-1 at 17].

As summarized by the Georgia Supreme Court in Bullard v. MRA Holding, LLC, "[a]n appropriation of likeness claim in Georgia is but one of several different torts relating to the invasion of one's privacy."  740 S.E.2d 622, 626 (Ga. 2013).  "[U]nlike a claim based on intrusion, disclosure, or false light," an appropriation of likeness claim "*does not require the invasion of something secret, secluded or private pertaining to plaintiff*, nor does it involve falsity."  Id. (cleaned up and emphasis added).  The elements of an appropriation claim are "(1) the appropriation of another's name and likeness, whether such likeness be a photograph or other reproduction of the person's likeness, (2) without consent, and (3) for the financial gain of the appropriator."  Id. (cleaned up).  That which is "generally known" and "open to the public," however, cannot be appropriated.  See Pierce v. Warner Bros Ent., Inc., 237 F. Supp. 3d 1375, 1381 (M.D. Ga. 2017) (quoting Toffoloni v. LFP Publ'g Grp., LLC, 572 F.3d 1201, 1231 n.1 (11th Cir. 2009)) (holding that the plaintiff's likeness that was displayed on her real estate sign was "clearly 'open to

public observation' and generally known[,] as [p]laintiff willingly displayed her sign advertising her real estate business"); see also Cox Communications. Inc. v. Lowe, 328 S.E.2d 384, 386 (Ga. Ct. App. 1985) (noting that "there is no liability when the defendant merely gives further publicity to information about the plaintiff which is already public" in the context of criminal records). As discussed further below, a claim for appropriation of likeness may be barred by the First Amendment if the appropriation is used in a newsworthy production or expressive work.

Thus, the Court must determine (1) whether the Docuseries is a "newsworthy production," (2) whether the Docuseries is an "expressive work," (3) if Defendants waived their First Amendment rights that would otherwise shield them from the instant claim, and (4) whether Plaintiff's instant claim rests only on subject matter that was already generally known and open to the public. The Court addresses these questions in turn.

### 1. Is the Docuseries a newsworthy production?

Defendants argue that the First Amendment bars Plaintiff's claim because the Docuseries is a newsworthy production of public interest. [See Docs. 31-1 at 11–13; 32-1 at 11–16]. In response, Plaintiff contends that the newsworthiness of Herron's abuse was "long since over" by the time she was interviewed for the Betrayal Podcast and filmed at the UNG Presentation, and the use of her likeness was "incidental" to any public interest. [See Docs. 33 at 15–17; 34 at 2–7].

The Eleventh Circuit has observed that the right to privacy (which encompasses appropriation claims) and corresponding right of publicity is in tension with the First Amendment's protection of freedom of speech and of the press.[15] Toffoloni, 572 F.3d at 1207. Thus, Georgia courts have adopted a "newsworthiness" exception to appropriation claims. See id. The Georgia Supreme Court has held that "where an incident is a matter of public interest, or the subject matter of a public investigation, a publication in connection therewith can be a violation of no one's legal right of privacy." Waters v. Fleetwood, 91 S.E.2d 344, 348 (Ga. 1956). However, the newsworthiness exception is limited by both "timeliness" and "relatedness" boundaries. See Toffoloni, 572 F.3d at 1211. As to timeliness, Georgia courts have held that information related to criminal matters is the subject of public interest "[d]uring the pendency and continuation of the investigation" and until the "perpetrator[s] of the crime may be apprehended and brought to justice

---

[15] "There is no substantive difference between the interests protected by the common law 'right of publicity' and the interests protected by the appropriation prong of [an] invasion of privacy tort." Somerson v. World Wrestling Ent., Inc., 956 F. Supp. 2d 1360, 1365 (N.D. Ga. 2013). Rather, as the Georgia Supreme Court has explained, "the difference depends on whether the person is a private citizen or a public figure: 'We conclude that while private citizens have the right of privacy, public figures have a similar right of publicity.'" Id. at 1366 (quoting Martin Luther King, Jr., Ctr. for Soc. Change, Inc. v. Am. Heritage Products, Inc., 296 S.E.2d 697, 704 (Ga. 1982)). Thus, caselaw pertaining to "the right of publicity" applies to Plaintiff's appropriation claim. See id.

under the rules of our society."[16]  Tucker v. News Publ'g Co., 397 S.E.2d 499, 500

(Ga. Ct. App. 1990).  As to relatedness, courts have held that when a "plaintiff has,

albeit unwillingly, become an actor in a public drama," "[d]issemination of

information *pertaining to th[at] drama* is no violation of the plaintiff's right of

privacy."[17]  Toffoloni, 572 F.3d at 1211 (emphasis in original) (quoting Ramsey v.

Ga. Gazette Publ'g Co., 297 S.E.2d 94, 96 (Ga. Ct. App. 1982)).

---

[16] The Court notes that at least one judge in this district has held that the newsworthy exception also extends to "later production[s] of a dramatization about past newsworthy events."  See Thoroughbred Legends, LLC v. The Walt Disney Co., Civil Action No. 1:07-CV-1275-BBM, 2008 WL 616253, at *11 (N.D. Ga. Feb. 12, 2008).  However, in support of that expansion, the court relied on a single unpublished Eleventh Circuit decision which concerned claims for "intruding upon [] seclusion" and "publicly disclosing private facts."  See id. (citing Lucas v. Fox News Network, LLC, 248 F.3d 1180, 2001 WL 100181, at *2 (11th Cir. 2001)).  Because that decision is not binding authority on this Court and concerns claims not at issue here, the Court declines to similarly expand the newsworthy exception beyond "contemporaneous news stories."  See id. (noting that the "bulk of the cases" dismissed for the newsworthy exception "involve contemporaneous news stories"); United States v. Riley, 706 F. App'x 956, 963 (11th Cir. 2017) ("unpublished opinions are not considered binding precedent").

[17] When discerning where to draw the boundaries of the "timeliness" and "relatedness" limitations to the newsworthiness exception, the Eleventh Circuit has looked to the Restatement (Second) of Torts for guidance.  See Toffoloni, 572 F.3d at 1211.

> "The line is to be drawn when the publicity ceases to be the giving of information to which the public is *entitled,* and becomes a morbid and sensational prying into private lives for its own sake, *with which a reasonable member of the public, with decent standards, would say that he had no concern.*"  [RESTATEMENT (SECOND) OF TORTS § 652D cmt. H] (emphasis added).  The Restatement expounds that "[t]he limitations . . . are those of common decency, having due regard to the freedom of the press and its reasonable leeway to choose what it will tell the public, but also due regard to the feelings of the individual and the harm that will be done to him by the exposure."

Id. (holding that nude photos of a "well-known professional wrestler" who was murdered by her husband were not related to the "incident of public concern" or "drama" of the wrestler's death, particularly when such photos were taken over twenty (20) years old prior to her death, and at the time the photos were taken, the wrestler immediately asked for the photos to be destroyed).

Upon review and consideration, the Court declines to dismiss Plaintiff's appropriation claims based on the newsworthy exception. According to the Amended Complaint, Herron was arrested for sexual abuse in 2018, "which led to [his] arrest, conviction, and time served in prison." See Am. Compl. at p. 2. Several years later, on July 11, 2023, Defendant Hulu began streaming the Docuseries, produced by Defendants Glass and ABC. Id. ¶¶ 21, 47. Thus, because this is not such a case where the relevant criminal investigation is ongoing at the time Defendants used Plaintiff's voice, image, and likeness, the Court declines to dismiss Plaintiff's claim based on the newsworthiness exception.[18] See Tucker, 397 S.E.2d at 500.

## 2. Is the Docuseries an expressive work?

As summarized by another judge in this district, "[t]he First Amendment protection of freedom of expression" restricts appropriation of likeness claims. Thoroughbred Legends, 2008 WL 616253, at *11; see Nichols v. Moore, 334 F.

---

[18] Defendants Hulu and ABC also extensively cite portions of Plaintiff's Betrayal Podcast interview and UNG Presentation to argue that Plaintiff describes "textbook grooming and predator behavior." [See, e.g., Doc. 32-1 at 4–9, 15]. Defendants Hulu and ABC then attempt to use Plaintiff's words against her, contending that her story must fall within the newsworthy exception in order "to inform the public about the broader phenomena of sexual abuse," which is a matter of public interest. [Id. at 15]. Put differently, Defendants Hulu and ABC would effectively have the Court take the sweeping position that any survivor's account of sexual abuse can be freely appropriated for commercial gain as a "newsworthy" matter of public interest. [See Doc. 32-1 at 14–15]. In support, Defendants Hulu and ABC cite only two (2) cases—both of which involve defamation claims raised by individuals accused of sexual assault. [See id.] (citing Coleman v. Grand, 523 F. Supp. 3d 244, 259 (E.D.N.Y. 2021) and Johnson v. Freborg, 995 N.W.2d 374, 386 (Minn. 2023), cert. denied, 144 S. Ct. 819 (2024). The Court finds those cases inapposite to Plaintiff's claims and rejects Defendants Hulu and ABC's argument.

Supp. 2d 944, 955–56 (E.D. Mich. 2004) (noting that the First Amendment limits the right of publicity to the context of speech that proposes a commercial transaction, which excludes "works of artistic expression such as movies, plays, books, and songs"); Daly v. Viacom, Inc., 238 F.Supp.2d 1118, 1123 (N.D. Cal. 2002) ("Under the First Amendment, a cause of action for appropriation of another's name and likeness may not be maintained against expressive works, whether factual or fictional." (citation and internal quotations omitted)); Montgomery v. Montgomery, 60 S. W.3d 524, 529 (Ky. 2001) (holding that First Amendment barred a claim for violation of plaintiff's right of publicity based on a defendant's use of plaintiff's name, image and voice in a music video); Lane v. Random House, Inc., 985 F. Supp. 141, 146 (D.D.C. 1995) (dismissing an appropriation claim while noting that First Amendment's "newsworthiness privilege applies to" expressive works such as "advertisements for books, films, and other publications concerning matters of public interest.").

> The use of a person's identity primarily for the purpose of communicating information or expressing ideas is not generally actionable as a violation of the person's right of publicity. . . . The interest in freedom of expression also extends to use in entertainment and other creative works, including both fiction and nonfiction. . . . Similarly, the right of publicity is not infringed by the dissemination of an unauthorized print or broadcast biography. Use of another's identity in a novel, play, or motion picture is also not ordinarily an infringement. The fact that the publisher or other user seeks or is successful in obtaining a commercial advantage from an otherwise permitted use of another's identity does not render the appropriation actionable.

Thoroughbred Legends, 2008 WL 616253, at *12 (quoting RESTATEMENT (THIRD) OF UNFAIR COMPETITION § 47 cmt c (internal emphasis omitted)). The foregoing authority supports that Defendants' use of Plaintiffs' voice, image, and likeness in the Docuseries—an expressive work—is protected by Defendants' First Amendment right to freedom of expression. See id.

However, the Court's analysis does not stop there. Plaintiff argues that Defendant Glass allegedly waived its First Amendment right to publish her voice, image, and likeness, and Defendants ABC and Hulu are supposedly "bound" by that same waiver.[19] [Docs. 33 at 12, 18; 34 at 1–2].

### 3. Did Defendants waive their First Amendment rights?

It is well-settled that one's First Amendment rights can be waived. See, e.g., Youngblood-W. v. Aflac Inc., 796 F. App'x 985, 992 (11th Cir. 2019) (upholding the enforcement of a nondisclosure agreement and noting that individuals are "free to waive [their] right to speech in [] private agreements" when such an individual acts voluntarily and intelligently); see also Hunter v. Moore, 304 F.3d 1066, 1071 (11th Cir. 2002) ("Waiver of a constitutional right will only be found if the record discloses its 'intentional relinquishment or abandonment.'"). The United States

---

[19] Plaintiff does not otherwise squarely address Defendants' arguments that her appropriation of likeness claim should be dismissed because the Docuseries is an expressive work; her sole response to that argument is entirely premised on Defendants' supposed waiver of their First Amendment rights. [See Doc. 33 at 18 (stating that "whether the Podcast and Docuseries are expressive works . . . [Defendant] Glass waived [its] First Amendment rights"); see also generally Doc. 34].

Supreme Court has "assume[d]" that the standard for a wavier of Fourteenth Amendment rights is "the same standard applicable to waiver in a criminal proceeding, that is, that it be voluntary, knowing, and intelligently made, or an 'intentional relinquishment or abandonment of a known right or privilege.'"[20] D. H. Overmyer Co. Inc., of Ohio v. Frick Co., 405 U.S. 174, 186–87 (1972) (internal citation omitted). The Court assumes the same standard applies to the First Amendment. See id.; e.g., Youngblood-W., 796 F. App'x at 992. As Defendant Glass concedes, courts have upheld waivers of First Amendment rights based on contractual agreements and theories of promissory estoppel. [See Doc. 36 at 5–6]; see also, e.g., Cohen v. Cowles Media Co., 501 U.S. 663, 665 (1991) (holding that the "First Amendment does not confer on the press a constitutional right to disregard promises that would otherwise be enforced under state law").

Defendants ABC and Hulu assert that Plaintiff fails to allege any facts in support of her position that they are bound by Defendant Glass' purported waiver. [See Doc. 35 at 1]. The Court agrees. The Amended Complaint states that "no legal contract" exists between Plaintiff and Defendants ABC and Hulu and is devoid of any allegations that Plaintiff ever communicated with those Defendants. See generally Am. Compl. Thus, because Defendants ABC and Hulu's use of Plaintiff's

---

[20] "The question of waiver of a federally guaranteed constitutional right is, of course, a federal question controlled by federal law." Brookhart v. Janis, 384 U.S. 1, 4 (1966).

likeness is protected by those Defendants' First Amendment rights, and Plaintiff alleges no facts to support that Defendants ABC or Hulu waived those rights, the Court dismisses Plaintiff's claim for appropriation of likeness against Defendants ABC and Hulu.

Plaintiff's claim against Defendant Glass, however, fares differently. Here, Defendant Glass repeats many of the same arguments already discussed above as they apply to Plaintiff's breach of contract and promissory estoppel claims. [See, e.g., Doc. 36 at 5–10]. However, as discussed above, Plaintiff alleges that Defendant Glass waived its right to use her likeness in the Docuseries by making the Docuseries Promise through its alleged agent, Faison. See Am. Compl. ¶ 22. Plaintiff also alleges Defendant Glass waived its First Amendment right to freely use her voice through the Podcast Agreement. See id. ¶ 13. Accordingly, the Court finds Plaintiff plausibly alleges that Defendant Glass waived its First Amendment rights as to the publication of Plaintiff's voice, image, and likeness. See supra, part III.A–C; see also Cohen, 501 U.S. at 665.

4. Regardless of waiver, are Plaintiff's claims based on appropriation of that which is generally known and open to the public?

Finally, Defendant Glass argues that, regardless of any alleged waiver of its First Amendment rights, Plaintiff fails to allege that its use of her voice, image, or likeness falls outside the ambit of matters already open to public observation. [See

Doc. 36 at 1–2]. As noted above, that which is "generally known" and "open to the public" cannot be appropriated pursuant to Georgia law. See Pierce, 237 F. Supp. 3d at 1381. Defendant Glass contends that once Plaintiff's interview for the Betrayal Podcast was released to the public and amassed "more than eight million downloads," Plaintiff's previous relationship with (and abuse at the hands of) Herron became "open to public observation." [Doc. 36 at 2]; see Am. Compl. ¶ 16. Further, Defendant Glass argues that the UNG Presentation footage is "almost entirely duplicative" of Plaintiff's Betrayal Podcast interview; thus, according to Defendant Glass, the only "new" content in the Docuseries is the likeness of Plaintiff's face. [Doc. 36 at 3]. Defendant Glass quotes Toffoloni, 572 F.3d at 1206–07, for the proposition that "[n]o one has the right to object merely because . . . [her] appearance is brought before the public." [Id.] However, Defendant Glass neglects to include the next sentence from that case in its quoted excerpt. [See id.] In Toffoloni, the Eleventh Circuit made clear that a right to privacy is nonetheless invaded when a person's "*name or appearance*" is brought before the public "for the purpose of appropriating to the defendant's benefit the commercial or other values associated with the [person's] name or the likeness." See 572 F.3d at 1206–07 (emphasis added).

Here, Plaintiff alleges that Defendant Glass used her image and likeness in the Docuseries for commercial gain without her consent. See Am. Compl. ¶¶ 53–55.

Thus, the Court rejects Defendant Glass' argument that "the mere depiction of [Plaintiff's] face in the Docuseries is not actionable." [See Doc. 36 at 3]; see also Bullard, 740 S.E.2d at 626 (discussing that a claim for appropriation of likeness "does not require the invasion of something secret" and that the elements of an appropriation claim are "(1) the appropriation of another's name and likeness, whether such likeness be a photograph or other reproduction of the person's likeness, (2) without consent, and (3) for the financial gain of the appropriator").

Separately, Defendant Glass contends that the UNG Presentation was "an event that was 'open to public observation' because the classrooms of public schools are public forums for purposes of privacy rights." [Doc. 35 at 3]. Conversely, Plaintiff argues the UNG Presentation was not open to public observation. [see Docs. 33 at 15–17; 34 at 2–7]. Plaintiff contends that although universities and colleges generally allow visitors on campus, "they typically do not permit visitors to attend *classes* without permission." [Doc. 34 at 2] (emphasis in original). The Court finds this question to be one of fact more properly suited for summary judgment and

is insufficient to warrant dismissal.[21]   Accordingly, the Court denies Defendant

Glass' motion to dismiss Plaintiff's appropriation claim.

### E.   Unjust Enrichment

Plaintiff alleges a single count of unjust enrichment against Defendants ABC

and Hulu.  See Am. Compl. ¶¶ 93–95.  In her response brief, Plaintiff concedes that

if her appropriation claim against Defendants ABC and Hulu is dismissed, "the

unjust enrichment remedy will go with it."  [Doc. 34 at 7].  Accordingly, because

---

[21] Defendant Glass relies, in part, on Fourth Amendment jurisprudence defining public versus private to support its arguments.  [See Doc. 36 n.4].  The Court is unpersuaded that such jurisprudence extends to the definition of "generally known" and "open to the public observation" in the context of appropriation claims.  The Georgia Supreme Court's opinion in Bullard is instructive.  In Bullard, a fourteen-year-old "exposed her breasts to two unknown men in a parking lot in Panama City, Florida.  Bullard was aware that the men were videotaping her at the time and expressed no objection to being videotaped.  The two men and Bullard had no discussion about what future use the men might make of the videotape."  740 S.E.2d at 624.  Those men subsequently used a still photo of the video clip of Bullard on the cover of a video box and in television and internet advertisements.  Id.  The Georgia Supreme Court held that Bullard "states a claim for appropriation of likeness under Georgia law."  Id. at 626.  The court reasoned that Bullard's image was "arguably used without her consent to endorse" a product for defendant's commercial gain and noted that "any 'consent' that Bullard may have given by exposing herself to the two individuals who videotaped her does not amount to consent for those individuals . . . to use her image to endorse a product for their own commercial gain."  Id. at 627.  Arguably, a public parking lot is more "open to public observation" than a college classroom; yet, the fact that Bullard's actions occurred in a public parking lot had no bearing on the Georgia Supreme Court's analysis of her appropriation claim.  See generally id.; e.g., United States v. De La Rosa, 922 F.2d 675 (11th Cir. 1991) (holding that a parking lot, even with a security gate at the entrance, is a public area for purposes of the Fourth Amendment).

the Court dismisses Plaintiff's appropriation claim as to Defendants ABC and Hulu, the Court also dismisses her unjust enrichment claim as to those Defendants.[22]

## F. Punitive Damages

Plaintiff alleges punitive damages against all Defendants. Because none of Plaintiff's claims against Defendants ABC and Hulu survive, Plaintiff's claims for punitive damages against those Defendants are due to be dismissed.

Meanwhile, Plaintiff's claims for specific performance, promissory estoppel, and appropriation of likeness against Defendant Glass survive. Defendant Glass argues, and Plaintiff does not dispute, that the only claim Plaintiff alleges in the Amended Complaint that supports punitive damages is her appropriation of likeness claim. [See Doc. 31-1 at 24–25; see generally Doc. 33]. In the absence of any other arguments from Defendant Glass on the issue and because Plaintiff's appropriation of likeness claim survives, her claim for punitive damages survives as well.

---

[22] Even if Plaintiff's claim for unjust enrichment was not tied to her appropriation claim (as Plaintiff states that it is), the claim would still be ripe for dismissal. Pursuant to Georgia law, "a claim for unjust enrichment exists where a plaintiff asserts that the defendant induced or encouraged the plaintiff to provide something of value to the defendant; that the plaintiff provided a benefit to the defendant with the expectation that the defendant would be responsible for the cost thereof; and that the defendant knew of the benefit being bestowed upon it by the plaintiff and either affirmatively chose to accept the benefit or failed to reject it." Campbell v. Ailion, 790 S.E.2d 68, 73 (Ga. Ct. App. 2016). Here, the Amended Complaint is devoid of allegations that Plaintiff ever communicated with Defendants ABC or Hulu, much less that those Defendants induced Plaintiff to do anything. See generally Am. Compl. Thus, Plaintiff fails to plausibly allege an unjust enrichment claim. See Campbell, 790 at 73.

## IV. Conclusion

For the foregoing reasons, the Court **DENIES AS MOOT** Defendant Glass' Motion to Dismiss [Doc. 20] and Defendants ABC and Hulu's Motion to Dismiss [Doc. 22]. The Court **GRANTS IN PART AND DENIES IN PART** Defendant Glass' Motion to Dismiss the Amended Complaint [Doc. 31]. Specifically, the Court **GRANTS** Defendant Glass' motion to dismiss as to Plaintiff's claims for (1) breach of contract as to the Podcast Agreement and Docuseries agreement, (2) specific performance as to the Docuseries Agreement. Thus, the Court **DISMISSES** those claims. The Court **DENIES** Defendant Glass' motion in all other respects. [Doc. 31]. Additionally, the Court **GRANTS** Defendants ABC and Hulu's Motion to Dismiss the Amended Complaint. [Doc. 32]. Accordingly, the Court **DISMISSES** Plaintiff's claims as to those Defendants and **DIRECTS** the Clerk to **TERMINATE** Defendants ABC and Hulu as Party Defendants in this case.

Finally, the Court **DIRECTS** Defendant Glass to file its answer to the Amended Complaint within fourteen (14) days. See FED. R. CIV. P. 12(a)(4)(A). The Court **DIRECTS** Plaintiff to file a notice on the docket properly alleging both her and Defendant Glass' citizenships within fourteen (14) days. The Court also **DIRECTS** Defendant Glass and Plaintiff to file a Joint Preliminary Report and Discovery Plan in accordance with this District's Local Rules within thirty (30) days of the date of this order. See LR 16.2, NDGa.

**SO ORDERED**, this 16th day of August, 2024.

Eleanor L. Ross
United States District Judge
Northern District of Georgia