IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| RACHEL HELLER,<br><br>   Plaintiff<br><br>v.<br><br>ABC NEWS, INC.;<br>GLASS ENTERTAINMENT<br>GROUP LLC; and<br>HULU, LLC,<br><br>   Defendants. | Case No. 1:23-cv-04595-ELR |

**PLAINTIFF'S MOTION FOR
CERTIFICATE OF IMMEDIATE REVIEW**

Plaintiff Rachel Heller, by and through her undersigned counsel, hereby files this her Motion for Certificate of Immediate Review, showing the Court as follows:

**I.   Introduction**

In their motions to dismiss Plaintiff's First Amended Complaint (the "FAC"), all Defendants argued that they had a First Amendment right to broadcast the Betrayal Docuseries because (1) the Docuseries is a newsworthy production of public interest; (2) the Docuseries is an

-1-

expressive work; and (3) no right of privacy or publicity attaches to subject matter that Ms. Heller allegedly made available to public observation. The Court found that under the allegations set forth in the FAC, the Docuseries is not newsworthy [Doc. 37 at 30]; whether Ms. Heller's presentation at University of North Georgia was public is a question of fact [Doc. 37 at 36-37]; and although the Docuseries was protected by the First Amendment as an expressive work, Defendant Glass Entertainment, LLC ("Glass") waived that right in its agreement with Ms. Heller. [Doc. 37 at 34.]

With respect to Ms. Heller's claims against ABC News, Inc. ("ABC") and Hulu, LLC ("Hulu") in Count I (Misappropriation of Likeness), Count V (Unjust Enrichment), and Count VI (Punitive Damages), the Court dismissed those claims by finding that ABC and Hulu had not waived their First Amendment right of expression because no legal contract was alleged to exist between Ms. Heller and ABC and Hulu and there were no allegations that Ms. Heller ever communicated with those Defendants. [Doc. 37 at 33, 34.]

In opposition to ABC and Hulu's motion to dismiss, Ms. Heller argued, *inter alia*, that (1) ABC and Hulu's rights to produce and stream the Docuseries are no broader than Glass's rights and (2) ABC and Hulu are bound by Glass's waiver. [Doc. 34 at 1-2.] It is fundamental that no one can license or assign to another rights they do not have yet that is exactly what happened here. One serious adverse consequence of the Court's August 16, 2024, Order is that while courts will protect the privacy of a confidential source when a news agency agrees to keep her identity confidential, a buyer or licensee of the news agency's story may freely disclose to the public the identity of the confidential informant - because the buyer or licensee has no agreement with the source to keep her identity confidential. Ms. Heller believes that the Court did not intend such a result but, indeed, the Court's decision will be cited by broadcasters and publishers who disclose confidential sources from stories they purchase from entities or individuals who obtain stories based on promises of confidentiality with confidential sources.

ABC and Hulu's right to broadcast the Betrayal Docuseries exist exclusively by virtue of a license or assignment from Glass. ABC and

Hulu have no independent rights in or to the Betrayal Docuseries. They have whatever Glass has and nothing more.

The two issues for which Plaintiff Heller asks the Court to certify for appeal are (1) whether ABC and Hulu have rights to broadcast the Docuseries that are broader than Glass's rights; and (2) whether ABC and Hulu are bound by Glass's waiver of the First Amendment right of expression. These are pure questions of law that control a substantial part of the case – the entirety of Ms. Heller's claims against ABC and Hulu. Although the Court cited no authority in support of its implicit finding that ABC and Hulu had broader rights than Glass and that ABC and Hulu were not bound by Glass's waiver, there are substantial grounds for difference of opinion on these issues. Moreover, unless an immediate appeal is granted, the Court may have to start all over with Ms. Heller's claims against ABC and Hulu (*e.g.* discovery and trial) if the Eleventh Circuit were to reverse this Court's August 16, 2024, Order after a final judgment.

Ms. Heller further requests that this matter be stayed until the Eleventh Circuit rules on Ms. Heller's application to permit an appeal

and that if said application is granted, until the Eleventh Circuit issues its mandamus.

## II.   Statement of Facts

During the production of the Betrayal Podcast, Glass wanted to interview Ms. Heller and to use some or all of a recording of her voice from that interview in the Betrayal Podcast. FAC ¶ 9. Ms. Heller expressed an interest in being interviewed and allowing Glass to use the recording of her interview but only in the Betrayal Podcast. FAC ¶¶ 11, 13. On or about December 17, 2021, Glass presented Ms. Heller with an Appearance Release (the "Podcast Appearance Release") which, if signed by Ms. Heller, would have given Glass considerable and extensive rights to use ***and license others to use*** Ms. Heller's name, voice, image, likeness, and biographical information, as shown in the following provisions:

> I agree that Producer may tape and record my voice, conversation and sounds, during and in connection with my appearance, and that Producer shall be the exclusive owner of the results and proceeds of such taping, and recording (the "Materials") with the right, throughout the world, an unlimited number of times in perpetuity, to copyright, to use ***and to license others to use***, in any manner, and in all media (now known or hereafter invented), all or any portion

> thereof or a reproduction thereof in connection with the Program or otherwise.
>
> I further agree that ***Producer may use and license others to use my voice, likeness and any biographical material concerning me*** which I may provide in any and all media, and in the promotion, advertising, sale, publicizing and distribution of the Program and/or otherwise, in connection with the Program and in connection with Producer and/or affiliated services, throughout the world in any manner, an unlimited number of times in perpetuity. Producer shall not have any obligation to actually produce the Program, or to utilize my name, voice, likeness, biographical information or the Materials to exercise the rights and permissions granted herein for purposes of the Program or otherwise.

FAC ¶ 12 (emphasis added). Ms. Heller refused to agree to the Podcast Appearance Release because it was too broad. FAC ¶ 13. Thus, Ms. Heller never assigned the referenced rights to Glass and never agreed that Glass could license those rights to others.

With respect to the Betrayal Docuseries, on November 17, 2022, immediately after the filming of Ms. Faison and Ms. Heller's presentations at UNG, Glass employee Kayce McCue, who attended the presentations, handed Ms. Heller an On-Camera Release and ***a Non-Exclusive License Agreement*** for Ms. Heller to sign in the event she decided to permit Glass to use the filming of her presentation at UNG in

the Betrayal Docuseries. FAC ¶ 32. Ms. Heller later told Ms. McCue that she had objections to several portions of the On-Camera Release and the Non-Exclusive License Agreement. This led Ms. McCue to send Ms. Heller an amended On-Camera Release and an amended Non-Exclusive License Agreement on December 6, 2022. FAC ¶ 33.

Throughout December 2022 and even into February 2023, Ms. McCue repeatedly encouraged Ms. Heller to sign the amended On-Camera Release and the amended Non-Exclusive License Agreement so that Glass could legally use the filming of Ms. Heller at her UNG presentation in the Betrayal Docuseries. FAC ¶ 34. Ms. Heller never agreed to the amended On-Camera Release or the amended Non-Exclusive License Agreement. FAC ¶ 36. Thus, once again, Ms. Heller refused to assign her rights to Glass and never agreed that Glass could license those rights to others.

The reason Glass insisted on a non-exclusive license agreement, as made clear in the Podcast Appearance Release language set forth above, was so that Glass could *license* to others the rights Ms. Heller would assign to Glass, such as ABC and Hulu. It is Ms. Heller's position that

since Ms. Heller never agreed that Glass could license others to use her likeness or any other rights, and Glass had expressly waived its First Amendment right of expression, then anyone who licensed the Betrayal Docuseries from Glass (1) would not have had Ms. Heller's consent to use her likeness or other rights; (2) could not have had broader rights than Glass; and (3) would be bound by Glass's waiver of the First Amendment right of expression.

## III. Argument and Citation of Authority

### A. Standard for Certification for Immediate Review.

28 U.S.C. § 1292(b) provides as follows:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: *Provided, however,* That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

Ms. Heller's motion meets all the requirements of § 1292(b).

## B.  The Order Involves Controlling Questions of Law.

Ms. Heller seeks immediate review of two controlling questions of law, to wit: (1) whether ABC and Hulu have rights to broadcast the Docuseries that are broader than Glass's rights; and (2) whether ABC and Hulu are bound by Glass's waiver of the First Amendment right of expression.  Case law in numerous jurisdictions makes clear that Glass cannot license or assign to ABC and Hulu rights it does not own.  "It is axiomatic that one may not sell, assign or hypothecate that which he does not own."  *Settlement Funding, LLC v. Jamestown Life Ins. Co.*, 78 F. Supp. 2d 1349, 1361 (N.D. Ga. 1999) (quoting *Allstate Ins. Co. v. Am. Bankers Ins. Co. of Fla.*, 882 F.2d 856, 859 (4th Cir. 1989)).  "[R]ather, an assignment merely enables the assignee to step into the assignor's shoes."  *B.S.T. AG Sols., Inc. v. PWB AG Consulting, LLC*, No. 1:15-CV-88 LJA, 2015 WL 4067569, at *5 (M.D. Ga. July 2, 2015) (quoting *Connell v. CitiMortgage, Inc.,* No. CIV.A. 11-0443-WS-C, 2012 WL 5511087, at *9 (S.D. Ala. Nov. 13, 2012).  A plaintiff, for example, cannot assign patent rights it does not own.  *See Advanced Video Techs. LLC v. HTC Corp.*, No. 15 CIV. 4626 (CM), 2016 WL 3434819, at *13 (S.D.N.Y. June 14,

2016), *aff'd,* 879 F.3d 1314 (Fed. Cir. 2018) ("Receiver could not assign to AVT something that AVC did not own…AVC did not own Hsiun's interest in the patent."); *Abraxis Bioscience, Inc. v. Navinta LLC*, 625 F.3d 1359, 1367 (Fed. Cir. 2010) (assignment agreement that attempted to assign rights to existing patents was ineffective because the assignor did not own the patents); *Horizon Medicines LLC v. Apotex Inc.*, No. CV 22-640-CJB, 2022 WL 16739909, at *4 (D. Del. Nov. 7, 2022) ("while the assignment of patent rights may alter the ownership of those rights, such an assignment cannot expand those rights").

It is not surprising that the same principle is true with respect to copyrights. *See Filmvideo Releasing Corp. v. Hastings*, 668 F.2d 91, 93 (2d Cir. 1981) ("Since the proprietor of a derivative copyright cannot convey away that which he does not own…it follows that he cannot release that which he does not own into the public domain.").

The right to privacy and the right to publicity are important intellectual property rights. *Almeida v. Amazon.com, Inc.*, 456 F.3d 1316, 1322 (11th Cir. 2006) (citing *ETW Corp. v. Jireh Publ'g, Inc.*, 332 F.3d 915, 928 (6th Cir.2003) for the proposition that "[t]he right of publicity is

an intellectual property right of recent origin which has been defined as the inherent right of every human being to control the commercial use of his or identity"); J. Thomas McCarthy, *Melville B. Nimmer & the Rights of Publicity: A Tribute*, 34 U.C.L.A. L.Rev. 1703, 1712 (1987) (stating that the right of publicity has "matured into a distinctive legal category occupying an important place in the law of intellectual property"). "The first amendment is not a license to trammel on legally recognized rights in intellectual property." *Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 849 (11th Cir. 1990) (quoting *Dallas Cowboys Cheerleaders, Inc. v. Scoreboard Posters, Inc.*, 600 F.2d 1184, 1188 (5th Cir. 1979).

"The press, like others interested in publishing, may not publish copyrighted material without obeying the copyright laws." *Cohen v. Cowles Media Co.*, 501 U.S. 663, 669 (1991). Ms. Heller did not assign any of her rights to Glass and, therefore, Glass could not lawfully assign its copyright in the Betrayal Docuseries to ABC and Hulu. In sum, Glass cannot authorize ABC and Hulu to broadcast or stream any aspect of the

Betrayal Docuseries to which it has no rights, especially Ms. Heller's intellectual property rights.

### C. There is Substantial Ground for Difference of Opinion.

ABC and Hulu are expected to argue that they have more rights to broadcast and stream the Docuseries than Glass. Counsel for Ms. Heller has found no authority to support such a proposition. Relatedly, ABC and Hulu are expected to argue that they have First Amendment rights that are wholly independent of what was assigned to them by Glass. Again, counsel for Ms. Heller has found no authority to support such a proposition. ABC and Hulu are also expected to argue that under no circumstances are they bound to Glass's promise to Ms. Heller that it would not use her presentation at the University of North Georgia without her permission. However, as the assignee of Glass's rights and obligations regarding the Betrayal Docuseries, ABC and Hulu are bound to this promise as well.

### D.  An Immediate Appeal Will Materially Advance The Ultimate Termination Of The Litigation.

The Court's August 16, 2024, Order dismisses ABC and Hulu from this case. Ms. Heller seeks an immediate appeal to ask the Eleventh Circuit to reverse that ruling. If an immediate appeal is not granted, it is possible that Ms. Heller will proceed with discovery, pre-trial motions and trial against Glass, only to have the Eleventh Circuit reverse the Court's Order after final judgment. If that happens, we will need to start all over with Ms. Heller's claims against ABC and Hulu. This is certainly not in the interest of judicial economy and it will severely burden Ms. Heller. Thus, an immediate appeal stands the chance of materially advancing the termination of this litigation.

### IV.  Conclusion

For the reasons set forth above, Ms. Heller requests that the Court issue a certificate of immediate review on two issues: (1) whether ABC and Hulu have rights to broadcast the Docuseries that are broader than Glass's rights; and (2) whether ABC and Hulu are bound by Glass's waiver of the First Amendment right of expression. Ms. Heller further

requests that this matter be stayed until the Eleventh Circuit rules on Ms. Heller's application to permit an appeal and that if said application is granted, until the Eleventh Circuit issues its mandamus.

Dated: August 21, 2024               Respectfully submitted,

                                  By:  */s/ James W. Hawkins*
                                       James W. Hawkins
                                       Georgia Bar No. 338767
                                       Cary Ichter
                                       Georgia Bar No. 382515

                                       **ICHTER DAVIS LLC**
                                       400 Interstate North Pkwy, SE
                                       Suite 860
                                       Atlanta, Georgia 30339
                                       404.869.7600 (Phone)
                                       404.602.0037 (Fax)
                                       jhawkins@ichterdavis.com
                                       cichter@ichterdavis.com

                                       *Counsel for Plaintiff*

## **CERTIFICATION**

In accordance with LR 5.1C, ND GA, I hereby certify that this document has been prepared in 14 point, Century Schoolbook font.

*/s/ James W. Hawkins*
James W. Hawkins

## **CERTIFICATE OF SERVICE**

I certify that on August 21, 2024, I electronically filed **Plaintiff's Motion for Certificate of Immediate Review** with the Clerk of Court using the CM/ECF system, which will send notice of the filing and a copy of same to counsel for Defendants.

*/s/ James W. Hawkins*
James W. Hawkins