IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| RACHEL HELLER, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> GLASS ENTERTAINMENT GROUP LLC, ) <br> ) <br> Defendant. ) <br> ) | Case No. 1:23-cv-04595-ELR |

**JOINT PRELIMINARY REPORT AND DISCOVERY PLAN**

Plaintiff Rachel Heller ("Plaintiff") and Defendant Glass Entertainment Group LLC ("Defendant," together with Plaintiff, the "Parties"), by and through their undersigned counsel, hereby submit this Joint Preliminary Report and Discovery Plan ("Joint Report") as follows:

1. **DESCRIPTION OF CASE:**

    **(a) Describe briefly the nature of this action.**

    **Plaintiffs' Response:**

    Plaintiff Rachel Heller seeks actual damages, punitive damages, and litigation expenses, including attorneys' fees, against Defendant Glass Entertainment Group LLC ("Glass") for promissory estoppel and violation of Ms. Heller's right to privacy

168337132.1

through misappropriation of her likeness in connection with a docuseries produced by Glass.

**<u>Defendant's Response:</u>**

This suit arises out of the three-part ABC News documentary, produced by Defendant, and streaming on Hulu, entitled, *Betrayal: The Perfect Husband* ("the Docuseries"). The Docuseries tells the story of Jenifer Faison ("Faison") after she learned that her husband, Spencer Herron ("Herron"), had been living a secret double life following his arrest for the sexual assault of Plaintiff. The Docuseries broadcast Plaintiff's recorded statements made during an earlier related podcast similarly entitled *Betrayal* ("the Podcast") and tape of a presentation Faison and Plaintiff gave at a University of North Georgia ("UNG") criminal justice class, where they spoke about their relationships with Herron and the harm he caused to them and others.

Plaintiff's First Amended Complaint ("FAC") asserted claims against Defendant, ABC News, Inc. ("ABC") and Hulu, LLC ("Hulu") for: (1) Misappropriation of Plaintiff's Likeness; (2) Breach of Contract; (3) Specific Performance; (4) Promissory Estoppel; (5) Unjust Enrichment; and (6) Punitive Damages. Specifically, Plaintiff avers that Defendant entered into two oral agreements with Plaintiff whereby Defendant allegedly promised that: (1) Plaintiff's interview on the Podcast would be "used solely for the Podcast" (the purported "Podcast Agreement"); and (2) Plaintiff's UNG presentation would not be used in the Docuseries

without her consent (the purported "Docuseries Agreement"). Because portions of Plaintiff's Podcast interview and UNG presentation appear in the Docuseries, Plaintiff alleges that her right of publicity under Georgia law was violated.

On August 16, 2024, the Court dismissed Plaintiff's claims against Defendant for (1) Breach of Contract (Count II), and (2) Specific Performance as to the Docuseries Agreement (Count III). The Court also dismissed the claims against ABC and Hulu (dismissing them from the action), including Count V for Unjust Enrichment, which was asserted only against ABC and Hulu.

On January 14, 2025, the Court granted, in part, Defendant's motion for reconsideration, ruling that Plaintiff's appearance in the Docuseries was newsworthy, but upholding its ruling that Plaintiff's appropriation of likeness claim (Count I) withstood a motion to dismiss based on allegations that Defendant purportedly waived its First Amendment rights based on its alleged agreement to the Podcast Agreement and the Docuseries Agreement. Defendant denies, among other things, the existence of the Podcast Agreement and the Docuseries Agreement.

**(b) Summarize, in the space provided below, the facts of this case. The summary should not be argumentative nor recite evidence.**

**Plaintiffs' Response**:

Ms. Heller was a student at Kell High School in Cobb County, Georgia who graduated in 2018. She was the innocent victim of repeated sexual abuse by Spencer

Herron, one of her teachers, while she attended Kell. Ms. Heller reported Herron's sexual abuse to authorities in Cobb County which led to Herron's arrest, conviction, and time served in prison. After Herron's arrest, Herron's then-wife, Jenifer, discovered that Herron had had sexual relations with numerous women during their marriage. Glass produced a popular podcast regarding these events and thereafter produced a three-part docuseries titled "Betrayal – The Perfect Husband." Glass licensed the rights to the docuseries to ABC News and Hulu and Hulu began streaming the production on July 11, 2023. Without her permission, Ms. Heller was featured in the docuseries including, without limitation, the use of her voice from the podcast and a video of a presentation she gave to students at the University of North Georgia about her ordeal.

**Defendant's Response:**

Herron's arrest made national news after Plaintiff courageously spoke out against what he did to her. Plaintiff was interviewed for the Podcast during which time she claims to have set forth certain express conditions on how the recording could be used by Defendant, *i.e.*, "solely for the Podcast" (the purported "Podcast Agreement"). In addition, on November 17, 2022, Plaintiff and Faison both gave a presentation discussing their ordeals with Herron to a criminal justice class at UNG in Dahlonega, Georgia. Defendant filmed the presentation.

Days before, on November 5, 2022, Plaintiff alleges that she and Faison met at Faison's home to prepare. While there, the two allegedly discussed filming their presentations for the Docuseries. Plaintiff alleges that she expressed her reluctance to being taped, but Faison allegedly assured her, "[w]e would never be able to use footage of you if you didn't sign a release." The FAC avers that Faison's statement to Plaintiff created an oral contract with Defendant (the alleged "Docuseries Agreement") in which Defendant supposedly was permitted to tape Plaintiff at UNG, but thereafter Plaintiff would have control over whether the video footage could be used in the Docuseries.

Defendant denies, among other things, the existence of both the Podcast Agreement and Docuseries Agreement. Defendant further denies that such statements, if made by Faison, were sufficient to bind Defendant to an agreement between Faison and Plaintiff, or to act as a waiver of Defendant's First Amendment rights.

**(c) The legal issues to be tried are as follows:**

**Plaintiff's Response:**

- Did Glass promise to Ms. Heller not to publish or to limit the publication of Ms. Heller's voice, image, and likeness?

- Should Glass have reasonably expected that Ms. Heller would rely upon Glass's promises not to publish or to limit the publication of Ms. Heller's voice, image, and likeness?

- Did Ms. Heller rely upon Glass's promises?

- Did Glass invade Ms. Heller's privacy by misappropriating her voice, image, and likeness?

- Did Glass intentionally invade Ms. Heller's privacy?

- Did Ms. Heller suffer irreparable harm due to Glass's misappropriation of her voice, image, and likeness?

- To what extent has Ms. Heller been harmed by Glass's alleged misappropriation of Ms. Heller's voice, image, and likeness?

- To what extent has Ms. Heller been harmed by Glass's violation of its promises to Ms. Heller?

- Did Glass act in bad faith and/or cause Ms. Heller unnecessary trouble and expense such that Ms. Heller is entitled to recover her litigation expenses, including reasonable attorneys' fees?

- Do Glass's actions show willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences such that Ms. Heller is entitled to punitive damages and, if so, in what amount?

**Defendant's Response:**

- Did Plaintiff and Defendant enter into the purported Podcast Agreement?

- Did Defendant breach the purported Podcast Agreement?

7

- Did Plaintiff and Faison enter into the purported Docuseries Agreement?

- Did Faison have authority to act on behalf of Defendant to enter the purported Docuseries Agreement?

- Did Defendant breach the purported Docuseries Agreement?

- Did Defendant violate Plaintiff's privacy rights by re-publishing in the Docuseries the audio of her previously-published Podcast interview?

- Did Defendant violate Plaintiff's privacy rights by publishing in the Docuseries portions of Plaintiff's public speech made before a class at UNG?

- Are Plaintiff's claims barred by the First Amendment?

- Are Plaintiff's claims barred by the newsworthiness exception under Georgia law?

- Is there clear and convincing evidence that Defendant made a knowing, voluntary, and intelligent waiver of its First Amendment and newsworthiness rights (if it is assumed, *arguendo*, that newsworthiness can be waived at all)?

- To the extent Plaintiff can establish a claim for promissory estoppel, which Defendant denies, whether she suffered economic losses independent of tort damages (*e.g.*, emotional distress)?

- Whether Plaintiff can establish by clear and convincing evidence that punitive damages are warranted, which Defendant denies, and, if so, whether such damages are limited to the $250,000 amount permitted under O.C.G.A. § 51-12-5.1(g)?

- What other compensable damages, if any, has Plaintiff suffered if Defendant is found liable at all, which Defendant denies?

**(d)  The cases listed below (include both style and action number) are:**

    **(1)  Pending Related Cases:**

    **Joint Response:**

    None.

    **(2)  Previously Adjudicated Related Cases:**

    **Joint Response:**

    None.

**2.  THIS CASE IS COMPLEX BECAUSE IT POSSESS ONE OR MORE OF THE FEATURES LISTED BELOW (PLEASE CHECK):**

    \_\_\_\_\_ (1)  Unusually large number of parties
    \_\_\_\_\_ (2)  Unusually large number of claims or defenses
    \_\_\_\_\_ (3)  Factual issues are exceptionally complex
    X\_\_\_\_ (4)  Greater than normal volume of evidence
    X\_\_\_\_ (5)  Extended discovery period is needed
    \_\_\_\_\_ (6)  Problems locating or preserving evidence
    \_\_\_\_\_ (7)  Pending parallel investigations or action by government
    \_\_\_\_\_ (8)  Multiple use of experts
    \_\_\_\_\_ (9)  Need for discovery outside United States boundaries
    \_\_\_\_\_ (10) Existence of highly technical issues and proof

        X_____ (11)  Unusually complex discovery of electronically stored information

3. **COUNSEL:**

The following individually-named attorneys are hereby designated as lead counsel for the parties:

Plaintiff: Cary Ichter.

Defendant: David Aronoff.

4. **JURISDICTION:**

**Is there any question regarding this Court's jurisdiction?**

_____ Yes      X_____ No

If "yes," please attach a statement, not to exceed one page, explaining the jurisdictional objection. When there are multiple claims, identify and discuss separate the claim(s) on which the objection is based. Each objection should be supported by authority.

5. **PARTIES TO THIS ACTION:**

(a) **The following persons are necessary parties who have not been joined:**

    **Joint Response:**

    None.

(b) **The following persons are improperly joined as parties:**

    **Joint Response:**

    None.

(c) **The names of the following parties are either inaccurately stated or necessary portions of their names are omitted:**

**Joint Response:**

None.

**(d)  The parties shall have a continuing duty to inform the Court of any contentions regarding unnamed parties necessary to this action or any contentions regarding misjoinder of parties or errors in the statement of a party's name.**

**6.     AMENDMENTS TO THE PLEADINGS:**

Amended and supplemental pleadings must be filed in accordance with the time limitations and other provisions of Fed. R. Civ. P. 15. Further instructions regarding amendments are contained in LR 15.

**(a)  List separately any amendments to the pleadings that the parties anticipate will be necessary:**

**Joint Response:**

None.

**(b)  Amendments to the pleadings submitted LATER THAN THIRTY DAYS after the Joint Preliminary Report and Discovery Plan is filed, or should have been filed, will not be accepted for filing, unless otherwise permitted by law.**

**7.     FILING TIMES FOR MOTIONS:**

All motions should be filed as soon as possible. The local rules set specific filing limits for some motions.  These times are restated below.

All other motions must be filed WITHIN THIRTY DAYS after the beginning of discovery, unless the filing party has obtained prior permission of the court to file later. Local Rule 7.1A(2).

(a) *Motions to Compel:* before the close of discovery or within the extension period allowed in some instances. Local Rule 37.1.

11

168337132.1

(b) *Summary Judgment Motions:* within thirty days after the close of discovery, unless otherwise permitted by court order. Local Rule 56.1.

(c) *Other Limited Motions:* Refer to Local Rules 7.2A; 7.2B, and 7.2E, respectively, regarding filing limitations for motions pending on removal, emergency motions, and motions for reconsideration.

(d) *Motions Objecting to Expert Testimony:* Daubert motions with regard to expert testimony no later than the date that the proposed pretrial order is submitted. Refer to Local Rule 7.2F.

**8.   INITIAL DISCLOSURES:**

The parties are required to serve initial disclosures in accordance with Fed. R. Civ. P. 26. If any party objects that initial disclosures are not appropriate, state the party and basis for the party's objection. NOTE: Your initial disclosures should include electronically stored information. Refer to Fed. R. Civ. P. 26(a)(1)(B)

**Joint Response:**

During the pendency of several motions, the Court vacated the exchange of the disclosures pursuant to Fed. R. Civ. P. 26(a) and the prior deadline for the Parties to file this Joint Report. See Dkt. 46. On January 14, 2025, the Court lifted the stay and directed the Parties to file this Report with 30 days thereafter, i.e., February 13, 2025. Dkt. 51.

As noted below, the parties propose delaying the beginning of discovery until after the parties attempt resolution through mediation which should occur no later than ninety (90) days after the Court's entry of this Joint Preliminary Report and Discovery Plan. After mediation has been complete, the Parties will notify the Court within three (3) court days of the status of the mediation and of its completion. In the event

12

mediation is not successful, the discovery period will commence upon the filing of the notice. Initial disclosures are due no later than fourteen (14) days after such notice to the Court.

**9.   REQUEST FOR SCHEDULING CONFERENCE:**

Does any party request a scheduling conference with the Court? If so, please state the issues which could be addressed and the position of each party.

**Joint Response:**

No.

**10.   DISCOVERY PERIOD:**

The Parties respectfully request that Court delay the commencement of formal discovery and until the Parties participated in mediation. The mediation is expected to occur no later than ninety (90) days after the Court's entry of this Joint Preliminary Report and Discovery Plan. After mediation has been complete, the Parties will notify the Court within three (3) court days of the status of the mediation and of its completion. In the event mediation is not successful, the discovery period will commence upon the filing of the notice. As stated in LR 26.2A, responses to initiated discovery must be completed before expiration of the assigned discovery period.

Cases in this Court are assigned to one of the following three discovery tracks: (a) zero month discovery period, (b) four months discovery period, and (c) eight months discovery period. A chart showing the assignment of cases to a discovery track by filing category is contained in Appendix F. The track to which a particular case is assigned is also stamped on the complaint and service copies of the complaint at the time of filing.

Please state below the subjects on which discovery may be needed:

### **Plaintiffs' Response:**

Decisions made by Glass employees regarding the appropriation of Ms. Heller's voice, image, and likeness.

Revenue generated and to be generated by Glass due to licensing or sale of rights to the docuseries.

### **Defendant's Response:**

Among other things, discovery is needed regarding the following: (a) the circumstances surrounding the purported negotiation and consummation of the Podcast Agreement; (b) Plaintiff's communications regarding the Podcast and the Podcast Agreement with third parties, including Faison; (c) the circumstances surrounding the purported negotiation and consummation of the Docuseries Agreement; (d) Plaintiff's communications regarding the Docuseries and the Docuseries Agreement with third parties, including Faison; and (e) Plaintiff's claimed damages.

If the parties anticipate that additional time beyond that allowed by the assigned discovery track will be needed to complete discovery or that discovery should be conducted in phases or be limited to or focused upon particular issues, please state those reasons in detail below:

### **Joint Response:**

The parties believe that they will need six (6) months of discovery, largely due to the time Defendant anticipates it will need to search for and produce ESI.

**11.    DISCOVERY LIMITATION AND DISCOVERY OF ELECTRONICALLY STORED INFORMATION:**

(a) What changes should be made in the limitations on discovery imposed under the Federal Rules of Civil Procedure or Local Rules of this Court, and what other limitations should be imposed?

**Joint Response:**

None.

(b) Is any party seeking discovery of electronically stored information?

__X__ Yes       _____ No

If "yes,"

**(1) The parties have discussed the sources and scope of the production of electronically stored information and have agreed to limit the scope of production (*i.e.*, accessibility, search terms, date limitations, or key witnesses) as follows:**

**Joint Response:**

The Parties agree to work together in good faith to set reasonable limitations on the scope and timing of production if appropriate as discovery progresses. In the event the parties are not able to agree on issues regarding discovery of electronically stored information, the parties shall request a scheduling conference in paragraph 9 hereof.

**(2) The parties have discussed the format for the production of electronically stored information (*e.g.*, Tagged Image File Format (TIFF or .TIF files), Portable Document Format (PDF), or native), method of production (*e.g.*, paper or disk), and the inclusion or exclusion and use of metadata, and have agreed as follows:**

15

**Joint Response:**

The Parties agree to comply with the rules for electronic production consistent with the Federal Rules of Civil Procedure. The Parties will meet and confer as appropriate. In the event the parties are not able to agree on issues regarding discovery of electronically stored information, the parties shall request a scheduling conference in paragraph 9 hereof. In the event the parties are not able to agree on issues regarding discovery of electronically stored information, the parties shall request a scheduling conference in paragraph 9 hereof.

12. **OTHER ORDERS:**

What other orders do the parties think that the Court should enter under Rule 26(c) or under Rule 16(b) and (c)?

**Joint Response:**

None.

13. **SETTLEMENT POTENTIAL:**

(a) Lead counsel for the parties certify by their signatures below that they conducted a Rule 26(f) conference that was held on February 5, 2025, and that the participated in settlement discussions. Other persons who participated in the settlement discussions are listed according to party.

For plaintiff: Lead counsel (signature):       */s/ Cary Ichter*

    Other participants:       */s/ James W. Hawkins*

For defendant:  Lead counsel (signature):   */s/ David Aronoff*

16

Other participants:                          */s/ Joshua Bornstein*

**(b)    All parties were promptly informed of all offers of settlement and following discussion by all counsel, it appears that there is now:**

(X) A possibility of settlement before discovery.*
(_) A possibility of settlement after discovery.
(__) A possibility of settlement, but a conference with the judge is needed.
(__) No possibility of settlement.

**Joint Response:**

\* To facilitate meaning settlement discussions and mediation, the Parties have

agreed to a brief round of informal discovery prior to engaging in formal discovery.

**(c)    Counsel ( X ) do or (____) do not intend to hold additional settlement conferences among themselves prior to the close of discovery. The proposed date of the next settlement conference is to be determined by the Parties.**

**Joint Response:**

The mediation is expected to occur in the next ninety (90) days.

**(d)    The following specific problems have created a hindrance to settlement of this case.**

**Joint Response:**

None.

**14.    TRIAL BY MAGISTRATE JUDGE:**

Note: Trial before a Magistrate Judge will be by jury if a party is otherwise entitled to a jury trial.
    (a)    The parties (_____) do consent to having this case tried before a magistrate judge of this Court. A completed Consent to Jurisdiction b a United States Magistrate Judge form has been submitted to the clerk of court this ___ day of _____, 20__.

17

168337132.1

(b)  The parties (X) do not consent to having this case tried before a magistrate judge of this Court.

Respectfully submitted,

/s/ James W. Hawkins_____
James W. Hawkins
Georgia Bar No. 338767
Cary Ichter
Georgia Bar No. 382515
**ICHTER DAVIS LLC**
400 Interstate North Pkwy, SE
Suite 860
Atlanta, Georgia 30339
404.869.7600 (Phone)
404.602.0037 (Fax)
jhawkins@ichterdavis.com
cichter@ichterdavis.com


*Counsel for Plaintiff Rachel Heller*

/s/ David Aronoff_____
David Aronoff, Pro Hac Vice
Joshua Bornstein, Pro Hac Vice
**FOX ROTHSCHILD LLP**
10250 Constellation Blvd. Ste. 900
Los Angeles, California 90067
310.598.4150
310.556.9829 (Fax)
daronoff@foxrothschild.com
jborstein@foxrothschild.com

Elizabeth G. Brunette
Georgia Bar No. 560454
**FOX ROTHSCHILD LLP**
999 Peachtree Street NW Ste. 1500
Atlanta, Georgia 30309
404.962.1000 (Phone)
404.962.1200 (Fax)
ebrunette@foxrothschild.com

*Attorneys for Defendant Glass Entertainment Group*

168337132.1

* * * * * * * * * * * * *

**SCHEDULING ORDER**

Upon review of the information contained in the Joint Preliminary Report and Discovery Plan form completed and filed by the parties, the Court orders that the time limits for adding parties, amending the pleadings, filing motions, completing discovery, and discussing settlement are as set out in the Federal Rules of Civil Procedure and the Local Rules of this Court, except as herein modified:

IT IS SO ORDERED, this _____ day of _____, 20___.

_____
UNITED STATES DISTRICT JUDGE

168337132.1